# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BUTAMAX(TM) ADVANCED BIOFUELS LLC, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | C.A. No. 11-54-SLR-MPT |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GEVO, INC., | ) ) | **PUBLIC VERSION** |
| Defendant/Counterclaim Plaintiff, | ) ) ) | |
| v. | ) ) | |
| E.I. DUPONT DE NEMOURS AND CO., | ) ) | |
| Counterclaim-Defendant. | ) ) | |

## ANSWER TO COUNTERCLAIMS, DEFENSES, AND COUNTER-COUNTERCLAIMS

OF COUNSEL:

Leora Ben-Ami
Christopher T. Jagoe
Hank Heckel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

*Attorneys for Plaintiff Butamax$^{TM}$ Advanced Biofuels LLC*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff Butamax$^{TM}$ Advanced Biofuels LLC and Counterclaim Defendant E.I. du Pont de Nemours and Co.*

Dated: November 18, 2011
PUBLIC VERSION
Dated: November 29, 2011
1037245 / 36429

In response to Defendant/Counterclaim Plaintiff Gevo, Inc.'s ("Gevo") Answer to Amended Complaint, Affirmative Defenses, and Counterclaims, Counterclaim Defendants Butamax™ Advanced Biofuels LLC ("Butamax") and E.I. DuPont de Nemours and Co. ("DuPont") admit, deny, and aver as follows:

## THE PARTIES

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted that Butamax was formed in 2009. Counterclaim Defendants deny all allegations in paragraph 4 of Gevo's Counterclaims not expressly admitted.

5.     Admitted that individuals employed by DuPont engage in research and development relating to the production of isobutanol. Counterclaim Defendants deny all allegations of infringement.

6.     Admitted that Butamax engages in research and development relating to the production of isobutanol. Butamax headquarters are located in the DuPont Experimental Station. Counterclaim Defendants deny all allegations in paragraph 6 of Gevo's Counterclaims not expressly admitted.

7.     Denied.

## JURISDICTION AND VENUE

8.     The allegations in paragraph 8 of Gevo's Counterclaims contain legal conclusions and do not require a response. To the degree a response is required, Counterclaim Defendants deny the allegations set forth in paragraph 8.

9.     Counterclaim Defendants admit that Butamax filed its Complaint in this Court. Counterclaim Defendants further admit that Butamax is a limited liability company organized and existing under the laws of Delaware.  The remaining portions of paragraph 9 of Gevo's Counterclaims are legal conclusions that do not require a response.  To the degree a response is required, Counterclaim Defendants deny the allegations set forth in paragraph 9.

10.     Counterclaim Defendants admit that DuPont is incorporated under the laws of Delaware.   The remaining portions of paragraph 10 of Gevo's Counterclaims are legal conclusions that do not require a response.  To the degree a response is required, Counterclaim Defendants deny the allegations set forth in paragraph 10.

11.     The allegations in paragraph 11 of Gevo's Counterclaims are legal conclusions that do not require a response.  To the degree a response is required, Counterclaim Defendants deny the allegations set forth in paragraph 11.

## THE PATENTS-IN-SUIT

12.     Counterclaim Defendants admit that the face of the '375 patent recites the bibliographic information contained in paragraph 12 of Gevo's Counterclaims.  Counterclaim Defendants admit that Exhibit A (replacement) (Attachment #1 to D.I. 57) is a copy of the '375 patent.  Counterclaim Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 12 of Gevo's Counterclaims and therefore deny them.

13.     Counterclaim Defendants admit that the '375 patent includes the language, "a method provided herein includes a recombinant microorganism engineered to include reduced pyruvate decarboxylase (PDC) activity".  The remaining portions of paragraph 13 of Gevo's

Counterclaims are legal conclusions that do not require a response. To the degree a response is required, Counterclaim Defendants deny the allegations set forth in paragraph 13.

14. Counterclaim Defendants admit that the face of the '376 patent recites the bibliographic information contained in paragraph 14 of Gevo's Counterclaims. Counterclaim Defendants admit that Exhibit B (replacement) (Attachment #2 to D.I. 57) is a copy of the '376 patent. Counterclaim Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 14 of Gevo's Counterclaims and therefore deny them.

15. Counterclaim Defendants admit that the '376 patent includes the language "a recombinant yeast microorganism comprising a recombinantly overexpressed polynucleotide encoding a dihydroxy acid dehydratase (DHAD), and recombinantly overexpressed on or more polynucleotides encoding one or more activator of ferrous transport (Aft) proteins which increase the dehydratase activity of DHAD." The remaining portions of paragraph 15 of Gevo's Counterclaims are legal conclusions that do not require a response. To the degree a response is required, Counterclaim Defendants deny the allegations set forth in paragraph 15.

## FIRST COUNTERCLAIM -- INFRINGMENT OF THE '375 PATENT

16. Counterclaim Defendants incorporate by reference the answers set forth in paragraphs 1-15, above.

17. Counterclaim Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 17 of Gevo's Counterclaims and therefore deny them.

18. At least since the issuance of the '375 patent, Counterclaim Defendants have not made and do not make isobutanol-producing recombinant yeast microorganisms that express an α-ketoisovalerate decarboxylase from *Lactococcus lactis*, as required by every claim of the '375

3

patent, and therefore deny any allegations that Counterclaim Defendants make the yeast microorganisms claimed in the '375 patent. Counterclaim Defendants make recombinant yeast microorganisms that express an isobutanol biosynthetic pathway that comprises a gene not from *Lactococcus lactis* that expresses an enzyme that converts α-ketoisovalerate to isobutyraldehyde. Counterclaim Defendants admit that the recombinant yeast microorganisms made and used by Butamax produce isobutanol from glucose. Counterclaim Defendants deny all allegations in paragraph 18 of Gevo's Counterclaims not expressly admitted, including the statement that Gevo's allegations were made "[t]o the best of Gevo's knowledge, information and belief, formed after an inquiry reasonable under the circumstances."

19. At least since the issuance of the '375 patent, Counterclaim Defendants have not made and do not make isobutanol using recombinant yeast microorganisms that express an α-ketoisovalerate decarboxylase from *Lactococcus lactis*, as required by every claim of the '375 patent, and therefore deny any allegations that Counterclaim Defendants make isobutanol using the yeast microorganisms claimed in the '375 patent. Counterclaim Defendants deny all allegations in paragraph 19 of Gevo's Counterclaims not expressly admitted.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

## SECOND COUNTERCLAIM -- INFRINGMENT OF THE '376 PATENT

26.    Counterclaim Defendants incorporate by reference the answers set forth in paragraphs 1-25, above.

27.    Counterclaim Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 27 of Gevo's Counterclaims and therefore deny them.

28.    Denied.

29.    Denied.

30.    Denied.

31.    Denied.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Denied.

## PRAYER FOR RELIEF

This section constitutes a request for relief to which no response is required.  To the extent that this section may be deemed to allege any facts or factual or legal entitlements to the relief requested, Counterclaim Defendants deny all such allegations.  Counterclaim Defendants deny that Gevo is entitled to any of the requested relief.

## DEMAND FOR JURY TRIAL

Counterclaim Defendants join Gevo's request for a jury trial on all issues triable by jury.

## GENERAL DENIAL

Counterclaim Defendants deny all allegations in Gevo's Counterclaims not specifically admitted.

## DEFENSES

### I.     Lack of Subject Matter Jurisdiction

Gevo's counterclaims should be dismissed under Fed. R. Civ. P. 12(b)(1) because they fail to present a justiciable case or controversy, and the Court therefore does not have subject matter jurisdiction. Under the undisputed facts, Counterclaim Defendants do not directly infringe (literally or under the doctrine of equivalents), contributorily infringe, or induce infringement of, and at all relevant times to this action, have not directly infringed, contributorily infringed, or induced infringement of any valid and enforceable claims '375 and/or '376 patents.

### II.     Failure to State a Claim

The allegations of Gevo's counterclaims fail to state a claim upon which relief can be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6).

### III.     Butamax Does Not Infringe the '375 Patent

Butamax does not directly infringe (literally or under the doctrine of equivalents), contributorily infringe, or induce infringement of, and at all relevant times to this action, has not directly infringed, contributorily infringed, or induced infringement of any valid and enforceable claims of the '375 patent.

### IV.     DuPont Does Not Infringe the '375 Patent

DuPont does not directly infringe (literally or under the doctrine of equivalents), contributorily infringe, or induce infringement of, and at all relevant times to this action, has not directly infringed, contributorily infringed, or induced infringement of any valid and enforceable claims of the '375 patent.

### V. Butamax Does Not Infringe the '376 Patent

Butamax does not directly infringe (literally or under the doctrine of equivalents), contributorily infringe, or induce infringement of, and at all relevant times to this action, has not directly infringed, contributorily infringed, or induced infringement of any valid and enforceable claims of the '376 patent.

### VI. DuPont Does Not Infringe the '376 Patent

DuPont does not directly infringe (literally or under the doctrine of equivalents), contributorily infringe, or induce infringement of, and at all relevant times to this action, has not directly infringed, contributorily infringed, or induced infringement of any valid and enforceable claims of the '376 patent.

### VII. The '375 Patent Is Invalid

The '375 patent is invalid for failure to satisfy one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. 101, 102, 103, 112, 116, and/or 282, or under judicially created doctrines of invalidity.

### VIII. The '376 Patent Is Invalid

The '376 patent is invalid for failure to satisfy one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. 101, 102, 103, 112, 116, and/or 282, or under judicially created doctrines of invalidity.

### IX. The '375 Patent is Unenforceable

The '375 patent is not enforceable, in whole or in part, due to the wrongful and improper conduct of Gevo which constitutes patent misuse.

## X. The '376 Patent is Unenforceable

The '376 patent is not enforceable, in whole or in part, due to the wrongful and improper conduct of Gevo which constitutes patent misuse.

## XI. Estoppel With Respect to the '375 Patent

Gevo's counterclaims against Counterclaim Defendants are barred in whole or in part by the doctrine of estoppel, including, but not limited to, prosecution history estoppel arising from the patentee's actions, representations, or conduct before the USPTO during prosecution of the '375 patent.

## XII. Estoppel With Respect to the '376 Patent

Gevo's counterclaims against Counterclaim Defendants are barred in whole or in part by the doctrine of estoppel, including, but not limited to, prosecution history estoppel arising from the patentee's actions, representations, or conduct before the USPTO during prosecution of the '376 patent.

## XIII. Limitation on Damages

Gevo's claims for monetary relief are limited by 35 U.S.C. 287.

## XIV. Injunctive Relief

Gevo is not entitled to injunctive relief because any injury to Gevo is not immediate or irreparable, Gevo has an adequate remedy at law, and the balance of equities does not favor Gevo.

## XV. Unclean Hands

Gevo's claim for relief is barred, in whole or in part, by the equitable doctrine of unclean hands, at least because Gevo filed its Counterclaims for an improper and retaliatory purpose and without conducting a sufficient prefiling investigation as required under Fed. R. Civ. P. 11.

## COUNTER-COUNTERCLAIMS

Counterclaim Defendants Butamax™ Advanced Biofuels LLC ("Butamax") and E.I. DuPont de Nemours and Co. ("DuPont") assert the following counter-counterclaims against Gevo, Inc. ("Gevo"):

## THE PARTIES

1.      Butamax is a limited liability company organized and existing under the laws of the state of Delaware, with its principle place of business in Wilmington, Delaware.

2.      DuPont is a corporation organized and existing under the laws of the state of Delaware, with its principle place of business in Wilmington, Delaware.

3.      On information and belief, Gevo is a corporation organized and existing under the laws of the state of Delaware, with its principle place of business in Englewood, Colorado.

## JURISDICTION AND VENUE

4.      These counter-counterclaims arise under the Declaratory Judgment Act and the Patent Statute of the United States of America, Titles 28 and 35 of the United States Code. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

5.      This Court has personal jurisdiction over Gevo because Gevo has submitted itself to this Court's jurisdiction by filing its Counterclaims in this Court. Gevo is a Delaware corporation with a registered Delaware agent and, on information and belief, Gevo has purposefully availed itself of the benefits and protections of this state.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

7. Gevo's filing and maintenance of its Counterclaims has created an actual and justiciable controversy between Counterclaim Defendants and Gevo with respect to the non-infringement, invalidity, and unenforceability of the '375 and '376 patents.

## DEMAND FOR JURY TRIAL

8. Butamax and DuPont request a jury trial on all issues triable by jury.

## NATURE OF GEVO'S COUNTERCLAIMS

9. Butamax and Gevo are independently developing processes of producing isobutanol from recombinant microorganisms. Butamax brought this suit to stop Gevo from infringing its pioneering patents directed to microorganisms that have been genetically engineered to produce isobutanol by a particular biosynthetic pathway and methods of producing isobutanol from those microorganisms. The Butamax patents disclose an engineered isobutanol biosynthetic pathway that comprises chemical conversion steps performed by enzymes commonly referred to in the art as ALS, KARI, DHAD, KIVD, and ADH. The pathway efficiently converts pyruvate into isobutanol.

10. During the course of this litigation defendant Gevo obtained two later-filed patents with claims narrowly focused on certain aspects of the Butamax isobutanol pathway. The first Gevo patent, the '375 patent, has claims directed to recombinant yeast microorganisms that use a specific KIVD enzyme from the bacteria *Lactococcus lactis* to catalyze the fourth conversion step. The second Gevo patent, the '376 patent, has claims directed to improving the activity of an overexpressed DHAD enzyme by also recombinantly overexpressing one or more specific transcription factors known as activators of ferrous transport, abbreviated Aft1 and Aft2.

11. While Butamax practices certain embodiments of its own patents, it does not practice either of the alleged features which limit the scope of Gevo's patents. Without having a

reasonable basis to believe that Butamax would infringe either the '375 or '376 patent, Gevo filed counterclaims of infringement for the improper purpose of misleading third parties interested in the isobutanol market into thinking that Butamax lacks freedom to operate from Gevo.

12.    Gevo filed and is now maintaining its infringement Counterclaims against Butamax and DuPont in the face of undisputed evidence that Counterclaim Defendants do not now, and have not ever, infringed Gevo's asserted patents. In view of the specification and prosecution history of the '375 and '376 patents there is no reasonable construction of the claims that would have them read on the microorganisms made and used by Counterclaim Defendants. Thus, the allegations of infringement by Gevo are objectively baseless. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011). (affirming Rule 11 sanctions where patentee's claim construction position "borders on the illogical" and that "[t]he specification exposes the frivolity of [patentee's] claim construction position".)

13.    As is described in detail below, Gevo has every reason to know that its infringement allegations lack merit. Before the issuance of Gevo's asserted patents, Butamax provided Gevo with evidence of non-infringement and offered Gevo an opportunity to independently verify that fact. Gevo ignored Butamax's offer, however, and instead filed its counterclaims less than half an hour after its patents issued, without first having taken the reasonable step of contacting Butamax.

14.    On the same day that Gevo filed its suit, it issued a press release touting its newly issued patents and its lawsuit against Counterclaim Defendants. Gevo -- a publicly owned company -- made no mention in its press release of the non-infringement evidence provided by

Butamax, nor that Butamax had approached Gevo to offer it an opportunity to verify Butamax's non-infringement.

15.     Subsequent to Gevo's filing of its counterclaims, and despite having no obligation to do so, Butamax provided Gevo with additional, detailed evidence of non-infringement. Though Gevo has not disputed the truth of this evidence, and though, in light of this evidence, there is no reasonable basis for Gevo to maintain its Counterclaims, Gevo has insisted on maintaining them.

16.     On information and belief, Gevo has maintained its Counterclaims, despite its knowledge of the contrary evidence, for the improper purposes of continuing to mislead investors and customers, and harm Butamax.

## EVENTS GIVING RISE TO THESE COUNTER-COUNTERCLAIMS

17.     On December 14, 2010 United States Patent No. 7,851,188 B2 (the "'188 patent"), entitled FERMENTIVE PRODUCTION OF FOUR CARBON ALCOHOLS, duly and legally issued to inventors Gail K. Donaldson, Andrew C. Eliot, Dennis Flint, Lori Ann Maggio-Hall and Vasantha Nagarajan. The '188 patent is assigned to Butamax. (D.I. 1, Ex. A).

18.     Gevo infringes the '188 patent by making and using the claimed recombinant microbial host cells that convert sugars derived from biomass to isobutanol. Consequently, on January 14, 2011, Butamax filed a Complaint against Gevo in this action for infringement of Butamax's '188 patent. (D.I. 1) Gevo did not issue any press release to inform the public of the filing of Butamax's infringement suit at that time.

19.     Gevo filed an answer to Butamax's complaint on March 25, 2011. (D.I. 10). On information and belief, March 25, 2011 was also the first time Gevo issued a press release acknowledging that it was the accused infringer in a lawsuit by Butamax. Ex. 1.

20.     On August 9, 2011, United States Patent No. 7,993,889 B1 (the "'889 patent"),
entitled FERMENTIVE PRODUCTION OF FOUR CARBON ALCOHOLS, duly and legally
issued to inventors Gail K. Donaldson, Andrew C. Eliot, Dennis Flint, Lori Ann Maggio-Hall
and Vasantha Nagarajan. The '889 patent is assigned to Butamax. (D.I. 41, Ex. B). The '889
patent is a divisional of the '188 patent.

21.     Gevo also infringes the '889 patent. Consequently, on August 10, 2011, Butamax
moved to amend its Complaint to include allegations of infringement of the '889 patent against
Gevo, and Gevo did not oppose such amendment. (D.I. 40).

22.     Leave to amend was granted, and Butamax amended its Complaint accordingly on
August 11, 2011. (D.I. 40 (So Ordered) and D.I. 41).

23.     The same day that Butamax amended its Complaint, August 11, 2011, Gevo
issued a press release entitled "Gevo Believes Butamax's Newly Issued Patent is Invalid and Not
Infringed." Ex. 2.

24.     Subsequently, on August 18, 2011, litigation counsel for Gevo asked for a thirty-
day extension of time to answer Butamax's amended complaint, alleging that Gevo needed more
time to "analyze the ['889] patent." Ex. 3.

25.     Gevo purported to require an additional month to analyze the '889 patent despite
the fact that Gevo had already publicly declared, in its August 11, 2011 press release, that the
'889 patent was invalid and not infringed.

26.     Butamax agreed to Gevo's request for an extension of its time to answer as a
matter of professional courtesy, and the Court granted the extension. Ex. 4; (D.I. 45). As
described below, however, it seems that Gevo's requested extension was a pretext to gain

litigation advantage, allowing Gevo to add "counterclaims" of infringement of its later-issued patents without seeking leave of Court.

27.　　As the current action progressed, Gevo continued to pursue its own patent applications, including U.S. Patent Application Nos. 12/343,375 (the "'375 application") and 12/953,884 (the "'884 application").

28.　　A true and correct copy of the file wrapper for Gevo's '375 application (which later issued as the '375 patent) as attached hereto as Exhibit 5.[1]

29.　　A true and correct copy of the file wrapper for Gevo's '884 application (which later issued as the '376 patent) as attached hereto as Exhibit 6.

30.　　Counterclaim Defendants desired to guarantee that if and when Gevo's '375 and/or '884 applications issued as patents, and regardless of whether such patents were valid or enforceable, Counterclaim Defendants would not engage in any behavior that could conceivably be accused of infringing.

31.　　On July 22, 2011, the USPTO issued Notices of Allowance for Gevo's '375 and '884 applications. *See* Ex. 5 at pp. 873-79, 883-85; Ex. 6 at pp. 734-42, 755-57.

32.　　Counterclaim Defendants became aware of these Notices of Allowance as they were available on the USPTO's public PAIR website, on or about July 22, 2011.

33.　　On August 2, 2011, Gevo's underwriter put out an analyst report containing the headline, "A key patent allowance sheds light on where the Butamax lawsuit may be headed." The report went on to state:

> Allowances were recently granted on two patents. Upon further analysis of the claims posted on the USPTO website, it appears that Gevo was granted use of the metabolic pathway they invented for eliminating ethanol production in their yeast organism; this is the same pathway that Butamax used when it claimed

---

[1]　　For ease of reference, the pages of Exhibits 5 and 6 have been numbered.

infringement on patent 7,851,188. As prior art, the Butamax patent would have been scrutinized by the patent examiner; as such, we believe the allowance is an important step toward a favorable outcome for Gevo and putting the Butamax lawsuit behind them.

(Emphasis added).

34.     A true and correct copy of the August 2, 2011 analyst report is attached hereto as Exhibit 7.

35.     On becoming aware of the Notices of Allowance, Counterclaim Defendants undertook certain actions to ensure that their employees and agents would cease any activities that could conceivably be accused of infringing the pending claims of Gevo's '375 and/or '884 applications, before those applications issued as U.S. patents. These actions included, but were not limited to:

- Notifying all agents and employees of the allowed claims pursuant to the Notices of Allowance;
- Requiring all agents and employees having custody of potentially infringing materials (if any) in the U.S. to identify and segregate those materials;
- Restricting access to and/or marking "do not use" on all such identified materials (if any) in the U.S.; and
- Directing all agents and employees not to import into the U.S. (i) any potentially infringing materials; and (ii) any products made by potentially infringing methods claimed in the allowed patent applications.

36.     On September 2, 2011, to ensure compliance with these precautionary actions, Counterclaim Defendants sent a "Strain Segregation Form" to relevant agents and employees, requiring them to certify that they had provided for segregation all materials that could conceivably be accused of infringing Gevo's soon-to-issue patents. The Strain Segregation Form further required recipients to identify any genetic materials that were segregated in connection with this directive.

37. A true and correct copy of the Strain Segregation Form is attached hereto as Exhibit 8.

38. The distributed Strain Segregation Forms were completed, signed, and returned.

39. Consistent with the intended purpose of Fed. R. Civ. P. 11, Butamax engaged Gevo in an attempt to preempt the filing of meritless infringement claims. On September 9, 2011, General Counsel for Butamax, sent a letter to General Counsel for Gevo, (the "September 9 letter") detailing the actions that Butamax had taken to ensure "that Butamax is not making, using, selling or offering for sale any materials or practicing any methods that reasonably can be seen as potentially falling within the scope of the allowed claims" of Gevo's '375 and/or '884 applications. The September 9 letter further disclosed that Butamax's technology going forward does not meet at least two key limitations of the claims of Gevo's '375 and/or '884 applications.

40. The September 9, 2011 letter further offered Gevo the opportunity to confirm for itself that Butamax had taken the actions it described to ensure that no infringement was taking place. Specifically, the September 9 letter stated, "In the event that Gevo wishes a third party to confirm that the actions set forth above have been taken, Butamax is willing to discuss a process for allowing such third party verification."

41. The September 9 letter was sent to Gevo via email and post on September 9, 2011.

42. A U.S. Postal Service return receipt confirms that Gevo received a paper copy of the September 9 letter on September 12, 2011. Ex. 9.

43. The September 9 letter was additionally sent to Gevo's outside litigation counsel in this action, via email, on September 9, 2011. Receipt of this email was confirmed.

44. A true and correct copy of the September 9 letter is attached hereto as Exhibit 10.

45.     On information and belief, U.S. Patent Nos. 8,017,375 B2 (the "'375 patent") and

8,017,376 B2 (the "'376 patent") issued on September 13, 2011, from Gevo's '375 and '884

applications, respectively.

46.     The '375 patent as issued includes 7 claims.  Claim 1 is the only independent

claim of the '375 patent, and all other claims of the '375 patent depend from claim 1.

47.     Claim 1 recites

> 1.  A recombinant yeast microorganism for producing isobutanol,
> the recombinant yeast microorganism comprising an isobutanol
> producing metabolic pathway, wherein said isobutanol producing
> metabolic pathway comprises the following substrate to product
> conversions:
> (i) pyruvate to acetolactate;
> (ii) acetolactate to 2,3-dihydroxyisovalerate;
> (iii) 2,3-dihydroxyisovalerate to α-ketoisovalerate;
> (iv) α-ketoisovalerate to isobutyraldehyde; and
> (v) isobutyraldehyde to isobutanol;
> wherein said recombinant yeast microorganism expresses:
> (a) an acetolactate synthase to catalyze the conversion of pyruvate
> to acetolactate;
> (b) a ketol-acid reductoisomerase to catalyze the conversion of
> acetolactate to 2,3-dihydroxyisovalerate;
> (c) a dihydroxy acid dehydratase to catalyze the conversion of 2,3-
> dihydroxyisovalerate to α-ketoisovalerate;
> (d) **an α-ketoisovalerate decarboxylase from *Lactococcus lactis*
> to     catalyze     the     conversion     of     α-ketoisovalerate     to
> isobutyraldehyde**; and
> (e) an alcohol dehydrogenase to catalyze the conversion of
> isobutyraldehyde to isobutanol;
> wherein the recombinant yeast microorganism has been engineered
> to disrupt, mutate, or delete one or more endogenous pyruvate
> decarboxylase (PDC) genes, wherein said recombinant yeast
> microorganism has reduced endogenous PDC activity as compared
> to the corresponding yeast microorganism that has not been
> engineered to have reduce endogenous PDC activity, and wherein
> said recombinant yeast microorganism produces:
> (A) isobutanol at a yield which is at least 10% of the theoretical
> yield of isobutanol from glucose; and/or
> (B) ethanol at a yield which is 1.8% or less of the theoretical yield
> of ethanol from glucose.

'375 patent at 223:35-224:39 (emphasis added).

48. As issued the '376 patent includes 20 claims. Claim 1 is the only independent claim of the '376 patent, and all other claims of the '376 patent depend, directly or indirectly, from claim 1.

49. Claim 1 of the '376 patent states:

> A recombinant yeast microorganism comprising a recombinantly overexpressed polynucleotide encoding a dihydroxy acid dehydratase (DHAD), and **recombinantly overexpressed one or more polynucleotides encoding one or more activator of ferrous transport (Aft) proteins** which increase the dehydratase activity of DHAD.[2]

'376 patent at 89:55-60 (emphasis added).

50. Minutes after the '375 and '376 patents issued, at 12:29 a.m. on September 13, 2011, Gevo filed its Answer to Butamax's Amended Complaint in this action. (D.I. 52). Gevo's filing was timely only because Butamax had agreed to the thirty-day extension that Gevo had requested, purportedly to give Gevo time to analyze the '889 patent. Gevo's Answer included Counterclaims against Butamax and DuPont for infringement the '375 and '376 patents.

51. These Counterclaims arose from unrelated facts and different patents from those at issue in Plaintiffs' claims.

52. If Gevo had answered Butamax's complaint as originally scheduled, it would have been required to seek leave of Court to add its Counterclaims to the pleadings. Only by taking advantage of the extension agreed to by Butamax as a professional courtesy was Gevo able to unilaterally enter these Counterclaims. Had Gevo been required to move the Court, leave to amend should have been denied as futile.

53. Gevo filed its Counterclaims without having responded to Butamax's September 9 letter.

---

[2] According to a report September 13, 2011 report by analyst Piper Jaffray, Gevo's '376 patent is referred to internally as "the AFT patent." Ex. 11.

54.     Gevo's Answer and Counterclaims made no mention of the September 9 letter or of Butamax's offer for verification.

55.     Despite pleading that that the allegations were "To the best of Gevo's knowledge" and "formed after an inquiry reasonable under the circumstances" (D.I. 52, ¶¶ 18, 28). Gevo made no attempt to verify whether Counterclaim Defendants were engaged in potentially infringing activity since the issuance of the '375 and '376 patents.

56.     Gevo's Counterclaims failed to allege enough facts to state a claim for relief that is plausible on its face, and the only factual allegations contained therein were qualified with the statement, "These allegations have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

57.     Gevo's Counterclaims failed to plead facts sufficient to find that all required claim limitations of the '375 patent are met in any accused product. For example, Gevo's First Counterclaim does not specifically state that Counterclaim Defendants' technology includes "an α-ketoisovalerate decarboxylase from *Lactococcus lactis*" as required by every claim of the '375 patent.

58.     On September 13, 2011, the same day that it filed its Counterclaims, Gevo -- a publicly traded company -- issued a press release touting the newly issued '375 and '376 patents, and announcing that it had "filed a lawsuit against Butamax™ and its affiliate DuPont." The September 13 press release quotes Gevo's General Counsel, stating "Our lawsuit is based on Butamax's own publications describing their use of the technology that Gevo invented first and for which we have received patents." Ex. 12.

59.     The September 13 press release made no mention of the September 9 letter, in which Butamax specifically informed Gevo (and offered Gevo the opportunity to verify) that

Butamax was not using the technology cited by Gevo's General Counsel as the basis for its Counterclaims.

60.     As evidenced by its September 13 press release, Gevo has attempted to use the filing of its Counterclaims to gain advantage in the marketplace and to harm Butamax.

61.     On September 14, 2011, a day after Gevo filed its Counterclaims, Gevo General Counsel sent a letter to Butamax General Counsel (the "September 14 letter"), in which he, for the first time, acknowledged receipt of the September 9 letter.

62.     A true and correct copy of the September 14 letter is attached hereto as Exhibit 13.

63.     Gevo's September 14 letter, which made passing reference to "verification," was also Gevo's first acknowledgement of Butamax's offer (made before Gevo filed its counterclaims) for Gevo to confirm whether Butamax was engaging in infringing activities.

64.     On September 16, 2011, Butamax replied to Gevo's September 14 letter. Butamax's September 16, 2011, reply (the "September 16 letter") noted Butamax's "surprise[]" that [Gevo and its] litigation counsel chose to file suit against Butamax and DuPont without any reasonable inquiry following the detailed information and offer [Butamax] provided prior to [the '375 and '376] patents issuing." The September 16 letter further stated that Counterclaim Defendants "are preparing a motion requesting sanctions for Gevo's violation of Rule 11 under the Federal Rules of Civil Procedure...which we intend to file unless Gevo withdraws its counter claims against Butamax and DuPont."

65.     On information and belief Gevo received the September 16 letter on September 17, 2011.

66.     The September 16 letter was additionally sent to Gevo's outside litigation counsel in this action, via email, on September 16, 2011. Ex. 14.

67.     A true and correct copy of the September 16 letter is attached hereto as Exhibit 15.

68.     On September 21, 2011, Gevo replied to the September 16 letter.

69.     A true and correct copy of the September 21 letter is attached hereto as Exhibit 16.

70.     On September 22, 2011, counsel for Gevo demanded expedited discovery from Butamax "to assess the assertions set forth in [Butamax's] letters of September 9 and 16." Ex. 17.

71.     Gevo demanded this expedited discovery despite having actively ignored Butamax's offer, made before Gevo filed its Counterclaims and issued its press release, to allow Gevo to assess the assertions in the September 9 letter.

72.     In response to Gevo's demands for expedited discovery, counsel for Butamax proposed a process whereby Butamax would provide additional information, sufficient to show that there is no basis for Gevo's infringement Counterclaims. The parties subsequently engaged in negotiations to reach a stipulation for the disclosure of information.

73.     On October 31, 2011, the parties entered into a Stipulation Regarding Disclosure of Information on Counterclaims of Infringement (the "Stipulation"). A corresponding stipulation to extend the time to answer Gevo's Counterclaims was So Ordered on November 3, 2011. (D.I. 114 (So Ordered)).

74.     A true and correct copy of the Stipulation is attached hereto as Exhibit 18.

75. While Counterclaim Defendants declined to provide all of the expedited discovery that Gevo demanded, Counterclaim Defendants remained willing to provide sufficient information to allow Gevo to verify that Counterclaim Defendants do not infringe and have not infringed the '375 and '376 patents.

76. In exchange, Gevo agreed to provide Counterclaim Defendants with Gevo's "proposed claim constructions of [selected] terms of the claims of the '375 and '376 patents" that formed the basis for Gevo's allegations, "along with citations to the intrinsic evidence that Gevo believes supports the constructions." Ex. 18 at p. 2.

77. Pursuant to the terms of the Stipulation, the parties exchanged information simultaneously on November 4, 2011.

79.

80.     Additionally, Counterclaim Defendants' November 4 disclosures included a copy of the Strain Segregation form that was distributed to and completed by relevant agents and employees of Counterclaim Defendants prior to the issuance of the '375 and '376 patents, so as to ensure that no activity that could conceivably be accused of infringing ever occurred.

81.     A true and correct copy of the Counterclaim Defendants' November 4, 2011 letter is attached hereto as Exhibit 20.

82.     At the request of Gevo's litigation counsel, Counterclaim Defendants subsequently provided further clarification to their disclosure on November 8, 2011.

83.     A true and correct copy of this clarification is attached hereto as Exhibit 21.

84.     In a November 11, 2011 disclosure to counsel for Butamax, counsel for Gevo unilaterally stated that "neither party shall cite or refer to this non-binding disclosure in any correspondence to or filing with the Court." The Stipulation contained no such provision. On information and belief, Gevo so limited its disclosure so that neither the Court nor the public can see the frivolous claim constructions that Gevo asserted.

85.     There is no reasonable claim construction under which Counterclaim Defendants' technology infringes the '375 and/or '376 patents, either literally or under the doctrine of equivalents, in light of the intrinsic evidence. This intrinsic evidence, including the prosecution histories of the '375 and '376 patents, is discussed in more detail below.

86.     Gevo has not withdrawn its Counterclaims of infringement of either the '375 or the '376 patents. Consequently, Counterclaim Defendants are forced to respond to these meritless Counterclaims.

## THE COUNTERCLAIM PATENTS-IN-SUIT

### THE '375 PATENT

87.    U.S. Patent No. 8,017,375 B2 (the "'375 patent"), is titled "Yeast Organism Producing Isobutanol at a High Yield". It was issued by the United States Patent and Trademark Office ("USPTO") on September 13, 2011, and on its face it indicates that it is assigned to Gevo. (D.I. 57, Exhibit A (replacement)).

88.    The claims of the '375 patent were allowed only after Gevo narrowed one of the claim limitations to a specific KIVD enzyme known to occur in the bacteria *Lactococcus lactis.*

**Prosecution History of the '375 Patent**

89.    U.S. Application No. 12/343,375 (the "'375 application"), which led to the issuance of the '375 patent, was filed with the USPTO on December 23, 2008. The '375 application had 130 original claims. *See* Ex. 5 at pp. 26-203.

90.    Applicants filed a preliminary amendment on February 4, 2011, that cancelled all 130 originally filed claims, and added 20 new claims, numbered 131-150. *See* Ex. 5 at pp. 411-17.

91.    Claim 131 was the only independent claim added by the preliminary amendment. Claim 131 of the application recited:

> A recombinant yeast microorganism for producing isobutanol, the recombinant yeast microorganism obtainable by: (a) engineering the microorganism to express an isobutanol producing metabolic pathway comprising at least one heterologous gene encoding an enzyme that catalyzes a pathway step in the conversion of pyruvate to isobutanol; and (b) engineering the microoganism to have reduced pyruvate decarboxylase (PDC) activity as compared to a parental microorganism.

*Id.* at p. 412. Claims 132-150 depended directly or indirectly from claim 131. *Id.* at pp. 412-15.

92.     An Office Action mailed March 30, 2011, indicates that the Examiner issued a restriction requirement requiring applicants to elect one of two groups of claims. The Office Action states that applicants elected, by telephone, to pursue claims 131-149. Ex. 5 at pp. 425-27.

93.     According to the March 30, 2011 Office Action, the Examiner rejected claims 131-149 under 35 U.S.C. § 103(a) for being unpatentable over Donaldson et. al. (the "'188 patent") in view of a publication by van Maris (*Applied and Environmental Microbiology* 70(1):159-166 (2004)) ("van Maris"). *Id.* at pp. 438-40.

94.     According to the file history, the Examiner conducted an in-person interview with Gevo and its representatives on April 22, 2011. According to the Examiner's interview summary, Gevo argued at the interview that its "results were unexpected as it was not known whether the KIVD protein would allow for ethanol production also." Ex. 5 at pp. 492-95.

95.     In response to Gevo's statements at the April 22, 2011 interview, the Examiner indicated to Gevo that "amending the claims to be limited to the specific KIVD protein used would appear to overcome the previous 103(a) rejections in view of applicants' unexpected results." *Id.* at p. 495. Applicants "indicated that they would look into the possibility of broadening the scope of the genus of KIVDs." *Id.*

96.     On April 28, 2011, applicants responded to the March 30, 2011 Office Action. In their response, applicants (1) amended claim 131 to incorporate the limitations of claims 132-137 and (2) amended claim 131 to be limited to KIVD derived from *Lactococcus Lactis.* Specifically, applicants stated:

> In view of results presented in the Applicants' specification, the Examiner suggested an amendment to claim 131 to overcome the rejections under 35 U.S.C. § 103(a). Specifically, the Examiner suggested amending the claims to specify the enzyme catalyzing

the conversion of α-ketoisovalerate to isobutyraldehyde is an α-ketoisovalerate decarboxylase derived from *Lactococcus lactis*. Although Applicants do not agree with the Examiner's characterization of the invention, in order to expedite prosecution, the claims have been amended to incorporate the Examiner's suggestion. As such, Applicants respectfully submit that the Examiner's rejection of the claims as being obvious is overcome and requests that this rejection be withdrawn.

Ex. 5 at pp. 691-92.

97.     Also on April 28, 2011, applicants submitted six additional references, including

De la Plaza et al. ("Biochemical and molecular characterization of α-ketoisovalerate

decarboxylase, and enzyme involved in the formation of aldehydes from amino acids by

*Lactococcus lactis*," *FEMS Microbiology Letters*, 238(2):367-374 (2004) ("De la Plaza")) with

an information disclosure statement. Exhibit 5 at pp. 499-509.

98.     On July 22, 2011, the USPTO mailed a Notice of Allowance for certain claims,

including claim 131, of the '375 application. In this Notice of Allowance, the Examiner stated:

> While van Maris et al. (cited in the prior Office action) teach a yeast cell where the endogenous PDC genes have been disrupted and one of skill in the art would have been motivated to use the yeast cell of van Maris et al and further modify it to comprise the isobutanol pathway of Donaldson et al. to increase the production of isobutanol as more pyruvate (precursor) would be available to synthesize isobutanol, one of skill in the art would have not expected the recited isobutanol or ethanol yields. It is noted that one of skill in the art would have expected (i) the *L. lactis* decarboxylase to also use pyruvate as a substrate, thus somewhat compensating for the lack of endogenous pyruvate decarboxylase activity, and (ii) the amount of ethanol produced in the PDC⁻ strains comprising the isobutanol pathway to be higher than that reported in the specification of the instant application as a result of the expected compensating effect of the *L. lactis* decarboxylase.

Ex. 5 at p. 877.

99.    Since the time the claims of the '375 patent were allowed, Gevo has continued to pursue claims in a divisional application, U.S. Patent Application no. 12/696,645 (the "'645 application").

100.    The '645 application as published includes 2 independent claims, claims 1 and 12. *See* publication no. U.S. 2011/0183392 A1, attached hereto as Ex. 22.

101.    Claim 1 of the '645 application reads as follows:

> 1. A microorganism for producing isobutanol, the microorganism comprising: an isobutanol producing pathway containing at least one exogenous gene, the microorganism selected to produce a recoverable quantity of isobutanol from a carbon source at a yield of at least 10 percent theoretical, and wherein the microorganism is transformed to reduce pyruvate decarboxylase (PDC) activity and glycerol 3-phosphate dehydrogenase (GPD) activity.

102.    Claim 12 of the '645 application reads as follows:

> 12. A method of producing isobutanol, comprising: (a) providing a microorganism transformed with an isobutanol producing pathway containing at least one exogenous gene, the microorganism selected to produce the isobutanol from a carbon source at a yield of at least 10 percent theoretical, and wherein the microorganism is transformed to reduce pyruvate decarboxylase (PDC) activity and glycerol 3-phosphate dehydrogenase (GPD) activity; (b) cultivating the microorganism in a culture medium containing a feedstock providing the carbon source, until a recoverable quantity of the isobutanol is produced; and (c) recovering the isobutanol.

103.    During prosecution of the '645 patent, Gevo has again argued that it should be entitled to a claim reading on other KIVD enzymes, and the Examiner has again limited Gevo's claims to the KIVD from *Lactococcus lactis*.

104.    A true and correct copy of the October 13, 2011, non-final rejection of the '645 application is attached hereto as Exhibit 23.

105.    Further during the course of its prosecution of the '645 application, Gevo and the Patent examiner specifically discussed the reasons for allowance of the '375 patent.

106.   According to the Examiner's Interview Notes, during an October 20 telephone with Gevo's representatives, "An extensive discussion took place with regard to the 112 first rejections" of the application leading to the '375 patent:

> Specifically, the discussion related to the argument that any alpha-ketoisovalerate decarboxylase would result in the recited isobutanol yield. The Examiner indicated that the parent case was allowed on the basis that it was the K. lactis [sic] alpha-ketoisovaleate decarboxylase in combination with the pdc-mutant which resulted in the high yield and that while the art suggested such combination, the recited yield was not suggested or expected. Therefore, it was not believed that any alpha-ketoisovalerate decarboxylase would result in the recited yield. Applicant's representative suggested several amendments and submission of evidence to support applicant's position, but no agreement was reached.

Examiner's Notes regarding 10/20/11 telephonic interview at p. 2.

107.   A true and correct copy of the Examiner's Notes regarding the 10/20/11 telephonic interview is attached hereto as Exhibit 24.

**Construction of Relevant Claim Terms of the '375 Patent**

108.   Limitation "(d)" of claim 1 of the '375 patent requires that the claimed recombinant yeast microorganism "expresses . . . an α-ketoisovalerate decarboxylase from *Lactococcus lactis*."

109.   A person having ordinary skill in the art would understand the meaning of the term "an α-ketoisovalerate decarboxylase from *Lactococcus lactis*" in view of the specification, file history and cited prior art.

110.   The '375 patent specification refers to the KIVD from The '375 patent specification as an enzyme having the distinct amino acid sequence and properties of the KIVD enzyme identified in the '375 patent as the enzyme from *Lactococcus lactis*. The amino acid sequence of that enzyme can be derived from the DNA sequence identified as SEQ ID NO:8 of

the '375 patent. *See, e.g.,* '375 patent at 39:33-35; 75-78; *see also* 41:35-39 (citing FIG. 28, SEQ ID NO:24); ; 171-180.

111. The '375 patent specification does not disclose any KIVD other than a KIVD from *Lactococcus lactis.*

112. The purportedly unexpected results that were the basis for allowance of the '375 patent were only shown by Gevo to occur in yeast that express a KIVD from *Lactococcus lactis.*

113. The narrowing amendments made during prosecution history, discussed above, were made for the purpose of patentability. Accordingly, Gevo is presumed to have surrendered the claim scope between the original and narrowed claim and is estopped from recapturing it through the doctrine of equivalents.

## THE '376 PATENT

114. U.S. Patent No. 8,017,376 B2 (the "'376 patent"), is titled "Methods of Increasing Dihydroxy Acid Dehydratase Activity to Improve Production of Fuels, Chemicals, and Amino Acids." It was issued by the USPTO on September 13, 2011, and on its face it indicates that it is assigned to Gevo. (D.I. 57, Ex. B).

### Prosecution History of the '376 Patent

115. U.S. Application No. 12/953,884 (the "'884 application"), which led to the issuance of the '376 patent, was filed with the USPTO on November 24, 2010. Ex. 6 at pp. 16-160.

116. Gevo filed the '884 application with 72 claims directed to, *inter alia,* a recombinant microorganism comprising a DHAD-requiring biosynthetic pathway engineered to overexpress one or more Aft proteins. *See* Ex. 6 at pp. 16-160.

117.    On April 8, 2011, Gevo cancelled claims 1-72 and filed an amended claim set

with 20 claims, numbered 73 to 92. *See* Ex. 6 at pp. 185-97. This amended claim set contained

one independent claim, claim 73, which read:

> 73. (New) A recombinant yeast microorganism comprising an
> overexpressed polynucleotide encoding a dihydroxy acid
> dehydratase (DHAD), wherein said recombinant microorganism is
> engineered to overexpress one or more polynucleotides encoding
> one or more Aft proteins or homologs thereof.

*Id.* at p. 188.

118.    On June 9, 2011, the Gevo applicants filed an Information Disclosure Statement

disclosing, among other things, publications relating to FRA2. Ex. 6 at pp. 231-40. (*See, e.g.,*

Kumanovics et al., "Identification of Fra1 and Fra2 as genes involved in regulation the yeast

iron regulon in response to decreased mitochondrial iron-sulfur cluster synthesis." *J. Biol.*

*Chem.* 283:16, 10276-10286 (Apr. 18, 2008), Ex. 6 at pp. 408-18; Li et al., "Histidine 103 in

Fra2 is an iron-sulfur cluster ligand in the [2Fe-2S] Fra2-Grx3 complex and is required for in

vivo iron signaling in yeast." *J. Biol. Chem.* 286:1, 867-876 (Jan. 7, 2011) ("Li et al."), Ex. 6 at

pp. 476-85; Li et al., "The yeast iron regulatory proteins Grx3/4 and Fra2 form heterodimeric

complexes containing a [2Fe-2S] cluster with cysteinyl and histidyl ligation." *Biochemistry*

48:40, 9569-9581 (Oct. 13, 2009)), Ex. 6 at pp.460-66.

119.    The USPTO mailed a Notice of Allowance and Notice of Allowability for the

'884 application on July 22, 2011. The Notice of Allowability contained the following

Examiner's amendment to claim 73:

> 73.    A recombinant yeast microorganism comprising ~~an~~
> recombinantly overexpressed polynucleotide encoding a dihydroxy
> acid dehydratase (DHAD), ~~wherein said recombinant~~
> ~~microorganism is engineered to~~ and recombinantly overexpress~~ed~~
> one or more polynucleotides encoding one or more activator of
> ferrous transport (Aft) proteins which increase the dehydratase
> activity of DHAD ~~or homologs thereof~~.

Ex. 6 at p. 737. According to the Examiner's notes, Gevo's representative gave authorization for this amendment during telephone interviews on July 8, 2011, and July 15, 2011.

120. Accordingly, Gevo's claim, which originally included language claiming Aft proteins <u>or homologs thereof</u>, was narrowed to exclude such homologs.

121. In the Statement of Reasons for Allowance, the Examiner stated that:

> the claimed recombinant yeast is novel; and not obvious to make a yeast host cell having [sic] <u>recombinantly overexpressing an activator of ferrous transport (Aft)</u> which increase the dehydratase activity of DHAD, in addition to the overexpression of DHAD because Rutherford et al. (The Journal of Biological Chemistry, 2005, Vol. 280, pages 10135-10140; cited in IDS filed on 6/9/2011) discloses "Aft1/Aft2 is not linked to the maturation of cytosolic/nuclear Fe/S proteins" (see the Abstract) which teaches away from the instant invention.

Ex. 6 at pp. 740-741 (emphasis added.)

122. A true and correct copy of the Rutherford et al. reference referred to by the Examiner is included in the File Wrapper for the '376 patent, and can be found at Ex. 6 at pp. 623-28.

123. On information and belief, the '884 application issued as U.S. Patent No. 8,017,376 on September 13, 2011.

**Construction of Relevant Claim Terms of the '376 Patent**

124. Claim 1 of the '376 patent requires, *inter alia*, recombinant yeast microorganisms comprising a "recombinantly overexpressed one or more polynucleotides encoding one or more activator of ferrous transport (Aft) proteins."

125. A person having ordinary skill in the art would understand the meaning of the terms "recombinantly overexpressed one or more polynucleotides", and "encoding one or more activator of ferrous transport (Aft) proteins" in view of the specification, file history and cited prior art.

31

126. The specification of the '376 patent states that the term "overexpression" refers to an elevated level (e.g. aberrant level) of mRNAs encoding for a protein(s) (e.g. an Aft protein or homolog thereof), and/or to elevated levels of proteins (e.g. Aft) in cells as compared to similar corresponding unmodified cells expressing basal levels of mRNAs (e.g. encoding Aft proteins) or having basal levels of proteins. *See, e.g.,* '376 patent at 10:50-61.

127. The specification of the '376 patent uses the terms "overexpress" and/or "overexpression" more than 100 times.

128. The '376 patent expressly defines "activator of ferrous transport" as meaning Aft1 and Aft2. '376 patent at 16:58-60.

129. The Aft1 protein is specifically defined in the specification of the '376 patent as having the SEQ ID NO: 2. *See, e.g.,* '376 patent at 2:41.

130. The Aft2 protein is specifically defined in the specification of the '376 patent as having the SEQ ID NO: 4. *See, e.g.,* '376 patent at 2:42.

131. The specification of the '376 distinguishes Aft proteins from Aft homologs. *See, e.g.,* '376 patent at 2:40-42.

132. The specification of the '376 distinguishes Aft proteins from proteins that are regulated by Aft proteins. *See, e.g.,* '376 patent at 2:23-31.

133. Aft proteins and homologs thereof are identified in the specification of the '376 patent at 2:23-31; Table 2.

134. Genes and gene products (i.e. proteins) regulated by Aft proteins are different and distinct from Aft proteins, and are separately identified in the specification of the '376 patent at 3:3-14.

135. The narrowing amendments made during prosecution history, discussed above, were made for the purpose of patentability. Gevo is presumed to have surrendered the claim scope between the original and narrowed claim and is estopped from recapturing it through the doctrine of equivalents.

## COUNTERCLAIM DEFENDANTS' TECHNOLOGY

### Counterclaim Defendants' Strains Do Not Express α-ketoisovalerate decarboxylase from *Lactococcus lactis*

136. Since September 13, 2011, Counterclaim Defendants have not made or used recombinant yeast microorganisms that express an α-ketoisovalerate decarboxylase from *Lactococcus lactis* to catalyze the conversion of α-ketoisovalerate to isobutyraldehyde to produce isobutanol.

■■■■■Prior art to the '375 patent taught that enzymes from *Lactococcus lactis* and other microorganisms could be used as part of an isobutanol biosynthetic pathway to catalyze the conversion of α-ketoisovalerate to isobutyraldehyde. (*See* '188 Patent at 12:48-50; Tables 1 and 2). ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■



144.

**Counterclaim Defendants' Strains Do Not Comprise Recombinantly Overexpressed Polynucleotide Encoding One or More Aft Proteins**

145.    Since September 13, 2011 Counterclaim Defendants have not made or used recombinant yeast microorganisms that comprise a recombinantly overexpressed polynucleotide encoding one or more activator of ferrous transport (Aft) proteins which increase the dehydratase activity of DHAD.



147.

## FIRST COUNTER-COUNTERCLAIM
## DECLARATORY JUDGEMENT ON NON-INFRINGEMENT OF THE '375 PATENT

148.    Counterclaim Defendants incorporate by reference the allegations set forth in paragraphs 1-147 of these Counter-Counterclaims.

149.    Gevo has alleged that Butamax has infringed one or more claims of the '375 patent.

150.    Gevo has alleged that DuPont has infringed one or more claims of the '375 patent.

151.    For at least the reasons discussed above, Butamax is not literally infringing and has not literally infringed, contributed to the literal infringement, or induced the literal infringement of any valid and enforceable claim of the '375 patent.

152.    For at least the reasons discussed above, DuPont is not literally infringing and has not literally infringed, contributed to the literal infringement, or induced the literal infringement of any valid and enforceable claim of the '375 patent.

153.

154.     For at least the reasons discussed above, Butamax is not infringing under the doctrine of equivalents and has not infringed under the doctrine of equivalents, contributed to the infringement under the doctrine of equivalents, or induced the infringement under the doctrine of equivalents of any valid and enforceable claim of the '375 patent.

155.     For at least the reasons discussed above, DuPont is not infringing under the doctrine of equivalents and has not infringed under the doctrine of equivalents, contributed to the infringement under the doctrine of equivalents, or induced the infringement under the doctrine of equivalents of any valid and enforceable claim of the '375 patent.

156.     █████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

157.     For at least the reasons discussed above, Gevo is estopped from alleging that Counterclaim Defendants infringe the '375 patent under the doctrine of equivalents.

158.     █████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████

159.     The filing and maintenance of Gevo's Counterclaims has created an actual and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Counterclaim Defendants and Gevo regarding non-infringement of the '375 patent.

160.     Counterclaim Defendants should be granted a declaration pursuant to 28 U.S.C. §2201 that they do not infringe or have not infringed, whether directly or indirectly, literally or by equivalents, any claim of the '375 patent.

## SECOND COUNTER-COUNTERCLAIM

## Declaratory Judgment On Non-Infringement Of The '376 Patent

161.    Counterclaim Defendants incorporate by reference the allegations set forth in paragraphs 1-160 of these Counter-Counterclaims.

162.    Gevo has alleged that Butamax has infringed one or more claims of the '376 patent.

163.    Gevo has alleged that DuPont has infringed one or more claims of the '376 patent.

164.    For at least the reasons discussed above, Butamax is not literally infringing and has not literally infringed, contributed to the literal infringement, or induced the literal infringement of any valid and enforceable claim of the '376 patent.

165.    For at least the reasons discussed above, DuPont is not literally infringing and has not literally infringed, contributed to the literal infringement, or induced the literal infringement of any valid and enforceable claim of the '376 patent.

166.    ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

167.    For at least the reasons discussed above, Butamax is not infringing under the doctrine of equivalents and has not infringed under the doctrine of equivalents, contributed to the infringement under the doctrine of equivalents, or induced the infringement under the doctrine of equivalents of any valid and enforceable claim of the '376 patent.

168.    For at least the reasons discussed above, DuPont is not infringing under the doctrine of equivalents and has not infringed under the doctrine of equivalents, contributed to the

infringement under the doctrine of equivalents, or induced the infringement under the doctrine of equivalents of any valid and enforceable claim of the '376 patent.

169. █████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

170. For at least the reasons discussed above, Gevo is estopped from alleging that Counterclaim Defendants' technology infringes the '376 patent under the doctrine of equivalents.

171. █████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

172. The filing and maintenance of Gevo's Counterclaims has created an actual and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Counterclaim Defendants and Gevo regarding non-infringement of the '376 patent.

173. Counterclaim Defendants should be granted a declaration pursuant to 28 U.S.C. §2201 that they do not infringe or have not infringed, whether directly or indirectly, literally or by equivalents, any claim of the '376 patent.

## THIRD COUNTER-COUNTERCLAIM

### Declaration of Invalidity of the '375 patent

174. Counterclaim Defendants incorporate by reference the allegations set forth in paragraphs 1-173 of these Counter-Counterclaims.

175. The '375 patent and each claim thereof is invalid for failure to satisfy one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code,

including, but not limited to, 35 U.S.C. 101, 102, 103, 112, 116, and/or 282, or under judicially created doctrines of invalidity.

176. The filing and maintenance of Gevo's Counterclaims has created an actual and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Counterclaim Defendants and Gevo regarding the invalidity of the '375 patent.

177. Counterclaim Defendants should be granted a declaration pursuant to 28 U.S.C. §2201 that one or more claims of the '375 patent is invalid.

### FOURTH COUNTER-COUNTERCLAIM

#### Declaration of Invalidity of the '376 patent

178. Counterclaim Defendants incorporate by reference the allegations set forth in paragraphs 1-177 of these Counter-Counterclaims.

179. The '376 patent and each claim thereof is invalid for failure to satisfy one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. 101, 102, 103, 112, 116, and/or 282, or under judicially created doctrines of invalidity.

180. The filing and maintenance of Gevo's Counterclaims has created an actual and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Counterclaim Defendants and Gevo regarding the invalidity of the '376 patent.

181. Counterclaim Defendants should be granted a declaration pursuant to 28 U.S.C. §2201 that one or more claims of the '376 patent is invalid.

### PRAYER FOR RELIEF

Wherefore Counterclaim Defendants pray for judgment in their favor and against Gevo as follows:

a) denying all relief sought by Gevo in its Counterclaims;

b) dismissing with prejudice all of Gevo's Counterclaims;

c) declaring that Counterclaim Defendants have not infringed and do not infringe, whether directly or indirectly, literally or by equivalents, any valid claim of U.S. Patent No. 8,017,375;

d) declaring that Counterclaim Defendants have not infringed and do not infringe, whether directly or indirectly, literally or by equivalents, any valid claim of U.S. Patent No. 8,017,376;

e) declaring that each and every claim of U.S. Patent No. 8,017,375 is invalid;

f) declaring that each and every claim of U.S. Patent No. 8,017,376 is invalid;

g) finding and declaring that this case is exceptional under 35 U.S.C. §285 or Fed. R. Civ. P. 11, and accordingly awarding Counterclaim Defendants their attorneys' fees incurred in defense against Gevo's Counterclaims;

h) awarding Counterclaim Defendants their costs incurred in defense against Gevo's Counterclaims pursuant to Fed. R. Civ. P. 54(d); and

i) granting such other relief as this Court deems just and equitable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Leora Ben-Ami
Christopher T. Jagoe
Hank Heckel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

*Attorneys for Plaintiff Butamax[TM] Advanced Biofuels LLC*

Dated: November 18, 2011
PUBLIC VERSION
Dated: November 29, 2011
1037245 / 36429

By:  */s/ David E. Moore*
　　　 Richard L. Horwitz (#2246)
　　　 David E. Moore (#3983)
　　　 Hercules Plaza, 6th Floor
　　　 1313 N. Market Street
　　　 Wilmington, DE 19801
　　　 Tel: (302) 984-6000
　　　 rhorwitz@potteranderson.com
　　　 dmoore@potteranderson.com

*Attorneys for Plaintiff Butamax[TM] Advanced Biofuels LLC and Counterclaim Defendant E.I. du Pont de Nemours and Co.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 29, 2011, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on November 29, 2011, the attached document was electronically mailed to the following person(s)

Thomas Grimm
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
tgrimm@mnat.com

James P. Brogan
Ann Marie Byers
Michelle Rhyu
Carolyn V. Juarez
Cooley LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
Tel: (720) 566-4000
jbrogan@cooley.com
abyers@cooley.com
mrhyu@cooley.com
cjuarez@cooley.com
zGevoButamaxLitigation@cooley.com

By: /s/ David E. Moore
    Richard L. Horwitz
    David E. Moore
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

999101 / 36429