## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BUTAMAX(TM) ADVANCED BIOFUELS LLC, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | C.A. No.  11-54-SLR-MPT |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GEVO, INC., | ) ) | **PUBLIC VERSION** |
| Defendant/Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) | |
| Counterclaim-Defendant. | ) | |

### PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS, <u>DISMISSING DEFENDANT'S FIRST AND SECOND COUNTERCLAIMS</u>

OF COUNSEL:

Leora Ben-Ami
Christopher T. Jagoe
Hank Heckel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
Tel: (212) 836-8000

*Attorneys for Plaintiff/Counterclaim Defendant Butamax™ Advanced Biofuels LLC*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff/Counterclaim Defendant Butamax™ Advanced Biofuels LLC and Counterclaim Defendant E. I. du Pont de Nemours and Company.*

Dated:  January 20, 2012
PUBLIC VERSION Dated:  January 27, 2012
1044857 / 36429

# TABLE OF CONTENTS

Page

I. INTRODUCTION.................................................................................................2

II. STATEMENT OF FACTS ..................................................................................3

III. LEGAL STANDARDS ......................................................................................6

    A.    Federal Rule of Civil Procedure 12(c).......................................................6

    B.    Literal Infringement...................................................................................8

    C.    Infringement Under the Doctrine of Equivalents .....................................8

IV. NON-INFRINGEMENT OF THE '375 PATENT ...........................................10

    A.    Claims of the '375 Patent ........................................................................10

    B.    Construction of the '375 Patent ...............................................................11

    C.    Butamax's Technology Does Not Literally Meet the "KIVD From *L.*
        *Lactis*" Limitation....................................................................................12

    D.    Butamax's Technology Does Not Infringe the "KIVD From *L. Lactis*"
        Limitation Under the Doctrine of Equivalents ........................................13

        1.    Gevo Is Estopped From Arguing That the '375 Patent Claims
            KIVD Enzymes Other Than KIVD From *L. Lactis*...................................13

        2.    Gevo Should Not Be Allowed to Claim Enzymes Other Than
            KIVD From *L. Lactis* Under the Doctrine of Equivalents, When it
            Could Not Have Lawfully Obtained Literal Claims to These Other
            Enzymes.........................................................................................15

        3.    A Finding That Enzymes From Other Sources Are Equivalent to
            Gevo's Claimed KIVD Would Vitiate the "From *L. Lactis*"
            Limitation ......................................................................................16

V. NON-INFRINGEMENT OF THE '376 PATENT...............................................17

    A.    Claims of the '376 Patent ........................................................................17

    B.    Construction of the '376 Patent................................................................17

    C.    Butamax's Technology Does Not Literally Meet the "Recombinantly
        Overexpressed Gene for Aft" Limitation of Claim 1 of the '376 Patent..............19

    D.    Butamax's Technology Does Not Infringe the "Recombinantly
        Overexpressed Gene for Aft" Limitation Under the Doctrine of
        Equivalents ...............................................................................................19

        1.    Gevo Is Estopped From Arguing That the '376 Patent Reads On
            "Aft Regulons" ...............................................................................19

Page

2.      Finding That Butamax's Technology Is Equivalent to the Cells of
        the '376 Vitiates the "Recombinantly Overexpressed Gene for Aft"
        Limitation ................................................................................................20

VI. CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amgen Inc. v. Hoescht Marion Roussel, Inc.,*
457 F.3d 1293 (Fed. Cir. 2006) .......................................................................................15

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) .......................................................................................................7

*Bayer AG v. Elan Pharm. Research Corp.,*
212 F.3d 1241 (Fed. Cir. 2000) .......................................................................................13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................................................................7

*Carnegie Mellon Univ. v. Hoffman-La Roche Inc.,*
541 F.3d 1115 (Fed. Cir. 2008) ...................................................................................16, 17

*Duramed Pharms., Inc. v. Paddock Labs, Inc.,*
715 F. Supp. 2d 552 (S.D.N.Y. 2010), *aff'd* 644 F.3d 1376 (Fed. Cir. 2011) ..................14, 15

*Eltech Sys. Corp. v. PPG Industries, Inc.,*
710 F. Supp. 622 (W.D. La. 1988), *aff'd* 903 F.2d 805 (Fed. Cir. 1990)................................4

*Eon-Net LP v. Flagstar Bancorp,*
653 F.3d 1314 (Fed. Cir. 2011) .........................................................................................5

*Exhibit Supply Co. v. Ace Patents Corp.,*
315 U.S. 126 (1942) .........................................................................................................14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
344 F.3d 1359 (Fed. Cir. 2003) (en banc) ..............................................................9, 19, 20

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
535 U.S. 722 (2002) ...........................................................................................9, 13, 14, 15

*Fraser v. High Liner Foods (USA), Inc.,*
337 Fed. Appx. 883, 2009 WL 1951894 (Fed. Cir. July 8, 2009), *cert. denied* 130
S.Ct. 2411 (2010).............................................................................................................20

*Freedman Seating Co. v. Am. Seating Co.,*
420 F.3d 1350 (Fed. Cir. 2005) ...................................................................................10, 16

*General Mills, Inc. v. Hunt-Wesson, Inc.,*
103 F.3d 978 (Fed. Cir. 1997) ...........................................................................................7

Page(s)

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950) ...................................................................................................... 10

*Greenbaum v. U.S.*,
    360 F. Supp. 784 (E.D. Pa. 1973) ................................................................................. 13

*In re Papst Licensing GMBH & Co. KG Litig.*,
    585 F. Supp. 2d 32 (D.D.C. 2008) .................................................................................. 8

*Jang v. Boston Scientific Scimed, Inc.*,
    C.A. No. 10-681-SLR, 2011 WL 4527319 (D. Del. Sept. 30, 2011) ...................... 6, 7

*Judin v. U.S.*,
    110 F.3d 780 (Fed. Cir. 1997) ........................................................................................ 4

*MarcTec LLC v. Johnson & Johnson*,
    No. 2010-1285, 2012 WL 8322 (Fed. Cir. January 3, 2012) ......................................... 5

*Pfizer, Inc. v. Ranbaxy Labs., Ltd.*,
    525 F. Supp. 2d 680 (D. Del. 2007) ............................................................................... 6

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
    321 F. Supp. 2d 612 (D. Del. 2004) ............................................................................... 6

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................... 12

*Porto Transport v. Consolidated Diesel Electric Corp.*,
    20 F.R.D. 1 (S.D.N.Y. 1956) ....................................................................................... 13

*Reed v. Turner*,
    2 F.R.D. 12 (E.D. Pa. 1941) ........................................................................................ 13

*SEC v. Tambone*,
    597 F.3d 436 (1st Cir. 2010) (en banc) .......................................................................... 7

*Southwall Tech., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ........................................................................................ 8

*Steamfeeder, LLC v. Sure-Feed Systems, Inc.*,
    175 F.3d 974 (Fed. Cir. 1999) ..................................................................................... 15

*Talbert Fuel Systems Patents Co. v. Unocal Corp.*,
    347 F.3d 1355 (Fed. Cir. 2003) ................................................................................... 15

Page(s)

*Venetec International, Inc. v. Nexus Medical, LLC,*
  541 F. Supp. 2d 612 (D. Del. 2008) ........................................................ 6

*Wahpeton Canvas Co. v. Frontier, Inc.,*
  870 F.2d 1546 (Fed. Cir. 1989) ........................................................ 8

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
  520 U.S. 17 (1997) .................................................... 8, 9, 10, 20

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,*
  904 F.2d 677 (Fed. Cir. 1990) .................................................. 9, 15, 16

**RULES**

Fed. R. Civ. P. 11 ................................................................................ 4

Fed R. Civ. P. 12 ................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ................................................................ 6, 8

Fed. R. Civ. P. 12(c) ................................................................ 1, 6, 21

Plaintiff and Counterclaim Defendant Butamax™ Advanced Biofuels LLC ("Butamax") and Counterclaim Defendant E. I. du Pont de Nemours and Company ("DuPont") (collectively, "Counterclaim Defendants") move this Court for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), dismissing Gevo's Counterclaims of patent infringement and granting Butamax and DuPont a declaratory judgment of non-infringement.[1]

To decide this motion, the Court need only address two discreet questions of claim construction:  (1) can Gevo's patent claims specifically requiring an enzyme <u>from a specific bacterial source</u> be infringed by an enzyme having a distinct sequence obtained from a different bacterial source?; and (2) can Gevo's patent claims requiring <u>recombinantly overexpressing genes encoding particular proteins</u> be met by a cell that does not overexpress a gene for those proteins?[2]  The detailed pleadings conclusively establish that, as a matter of logic and a matter of law, the answer to both these questions is a resounding "No."

Counterclaim Defendants are mindful of this Court's typical practice of deciding claim construction after discovery, and do not bring this motion lightly.  This exceptional situation, where the pleadings present simple and clear cut legal issues that are ripe for resolution, arose because Gevo first declined to undertake an adequate prefiling investigation and then determined to maintain infringement allegations based on an impossible interpretation of its patent claims. Counterclaim Defendants drafted an unusually detailed response to the Gevo counterclaims for a purpose – to position this case for early resolution and to avoid lengthy litigation that will only improperly burden Counterclaim Defendants and the Court.  Judgment of non-infringement, based on the pleadings, is necessary and warranted to avoid wasting millions of dollars litigating

---

[1]     Granting the motion would dispose of Gevo's 1st and 2nd Counterclaims and Counterclaim Defendants' 1st and 2nd Counter-counterclaims.

[2]     While not the only bases for non-infringement, these issues are so definitive that no others need be raised at this time.

claims that never should have been filed and present no plausible claim of entitlement to relief.

## I.   INTRODUCTION

Isobutanol is an alcohol that can be produced from renewable plant material. Isobutanol can be used as a biofuel, to fuel cars and other vehicles, and also has a variety of applications as an industrial chemical. In December 2010, Butamax was awarded a pioneering patent, U.S. Patent No. 7,851,188 B2 (the "'188 patent"), directed to the production of isobutanol through recombinant microbes having an engineered isobutanol biosynthetic pathway. The engineered pathway in the host cell comprises five chemical conversion steps performed by enzymes commonly referred to in the art as ALS, KARI, DHAD, KIVD, and ADH, respectively. Butamax was awarded a second patent relating to yeast expressing this pathway, U.S. Patent No. 7,993,889 (the "'889 patent"), in August 2011. Yeast engineered to express the Butamax pathway are useful for industrial-scale production of isobutanol, and Butamax is developing a commercial isobutanol-producing process that employs its patented technology. Gevo is also developing a commercial process to produce isobutanol from recombinant yeast. Butamax sued Gevo to stop it from using Butamax's patented technology.[3]

Subsequently, Gevo filed counterclaims alleging that Butamax and DuPont infringe two later-issued Gevo patents, U.S. Patent Nos. 8,017,375 (the "'375 patent") and 8,017,376 (the "'376 patent").[4] The first Gevo patent, the '375 patent, has claims that are directed to recombinant yeast microorganisms that produce isobutanol through the same five-step pathway first patented by Butamax (*see, e.g.,* '375 patent at 13:32-42), but that specify, *inter alia*, that the

---

[3]   As the Court is aware, a motion to preliminary enjoin Gevo's infringement is pending (D.I. 61).

[4]   The '375 and '376 patents are Exs. A and B, respectively, to Gevo's Counterclaims (D.I. 52). Gevo denied that Exs. 5 and 6 were complete because certain references disclosed to the PTO were not attached. Those references are not necessary for resolving the issues raised by this motion. Should the Court wish to review those additional references, Butamax will file a corrected exhibit.

"KIVD" enzyme that catalyzes the fourth conversion step of the isobutanol pathway is from a specific bacterial source, *i.e.*, "**from *Lactococcus lactis***". Every claim of the '375 patent includes this limitation. The second Gevo patent, the '376 patent, has claims directed to recombinant yeast microorganisms that overexpress the isobutanol pathway enzyme DHAD, and further requires recombinantly overexpressed genes for certain transcription factors, *i.e.*, "**recombinantly overexpressed polynucleotides encoding** . . . **activators of ferrous transport (Aft) proteins**". Every claim of the '376 patent includes this limitation.

As explained below, yeast used by Butamax and DuPont to produce isobutanol in the U.S. neither express a KIVD enzyme from *L. lactis* nor recombinantly overexpress genes encoding Aft proteins. Gevo knew these facts before filing, and since has been provided with addition information confirming them. In a desperate effort to bring and maintain its ill-conceived infringement claims, however, Gevo has taken the legally impossible position that such yeast nonetheless infringe Gevo's patents.[5] Butamax and DuPont respectfully submit that Gevo's claim construction is so clearly unsupportable that judgment of non-infringement -- which only requires construction of the two discreet limitations of the asserted patents -- can and should be entered on the pleadings, before extensive resources are spent on further litigation.

## II.    STATEMENT OF FACTS

Gevo filed its Counterclaims, without factual or legal basis, for the improper purpose of confusing the public as to the true nature of its dispute with Butamax. Butamax brought this lawsuit in January 2011 to stop Gevo from infringing the '188 patent. (ACC[6] ¶18). Butamax amended its pleadings in August 2011 to add an additional Butamax patent being infringed by

---

[5]    ACC ¶¶11, 12, 15, 16, 30, 39, 55, 63, 78, 79, 85, 86, 153, 156, 165, 168.
[6]    "CC" herein refers to Gevo's Counterclaims (D.I. 52), "CCC" to Butamax and DuPont's Counter-counterclaims (D.I. 114), and "ACC" to Gevo's Answer to Counter-counterclaims (D.I. 130).

Gevo, the '889 patent, to the case. (ACC ¶22). Gevo immediately issued a press release declaring that the '889 patent was "invalid and not infringed." (ACC ¶23). Gevo, however, delayed in answering the amended complaint, allegedly because it needed more time to "analyze the ['889] patent." (ACC ¶24). During this period of delay, Gevo was allowed claims in two patent applications of its own (leading to the '375 and '376 patents), purportedly directed to "efficient isobutanol production in microorganisms." (ACC ¶¶10, 27, 31). Even though the allowance of the later patents to Gevo has no bearing on the validity of the earlier Butamax patents, Gevo's stock underwriter published a report with the nonsensical statement that the allowance of Gevo's patents was an "important step toward . . . putting the Butamax lawsuit behind them." (ACC ¶33). Of course, issuance of a patent does not mean that one is not infringing another patent. Before the Gevo patents were granted, in an effort to avoid unnecessary litigation, Butamax informed Gevo of specific actions that Butamax had taken to ensure that it was not "making, using, selling, or offering for sale any materials" or "practicing any methods" that "reasonably [could] be seen as falling within the scope of the allowed claims" in the U.S. (ACC ¶¶39-44). Butamax offered Gevo the opportunity to have Butamax's assertions verified, but, despite this offer, Gevo made no effort to contact Butamax for the purpose of conducting a pre-filing investigation sufficient to meet the minimum standards of the "reasonably inquiry" required under Fed. R. Civ. P. 11.[7] (ACC ¶¶13, 53). Instead, twenty nine

---

[7] *See Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997) (finding Rule 11 sanctions warranted where neither plaintiff nor his counsel "made a reasonable effort to ascertain whether the accused devices satisfied the two key claim limitations, either literally or under the doctrine of equivalents."); *see also Eltech Sys. Corp. v. PPG Industries, Inc.*, 710 F. Supp. 622, 636-38 (W.D. La. 1988) (finding an exceptional case where defendant voluntarily provided a detailed description of its accused process and samples of its accused product to plaintiff, and plaintiff failed to conduct additional tests before filing its complaint.), *aff'd* 903 F.2d 805 (Fed. Cir. 1990). Adopting an unsupportable claim construction to cover an accused product also fails as a reasonable basis for filing suit.

minutes after the midnight issuance of its patents, Gevo answered Butamax's Amended Complaint and filed Counterclaims against Butamax and DuPont (newly named to the litigation) for infringement.   (ACC ¶50).   Hours later, Gevo issued a press release announcing its infringement claims against Butamax and DuPont. (ACC ¶¶14, 58).

Despite Gevo's pronouncements to the press, its counterclaim pleading did not identify any accused product or any particular evidence of infringement.  (D.I. 52).  Rather, Gevo made the unsupported statement that "[t]hese allegations have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (*See, e.g.*, CC ¶¶18, 28).  Butamax continued to press its view that there was no plausible basis for suit, and renewed its prior proposal that it disclose information to establish it was not using critically required elements of the asserted Gevo patents.  Finally, there occurred a stipulated exchange of information whereby Butamax provided information about the yeast it was currently using to produce isobutanol, and Gevo provided its supposed pre-filing claim constructions of selected terms of the claims of the '375 and '376 patents.  (ACC ¶¶73-76, 84).  Specifically,



(ACC ¶¶78-83, 137-140, 142-144,  CCC Exs. 19-21).

Butamax also disclosed

(ACC ¶¶78-83, 146, CCC Exs. 19-21).

---

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326-28 (Fed. Cir. 2011); *MarcTec LLC v. Johnson & Johnson*, No. 2010-1285, 2012 WL 8322, at *7 (Fed. Cir. January 3, 2012).

(CCC Exs. 19-21).  The parties' stipulation stated that, after this initial exchange, Gevo could request additional information, but Gevo requested no such additional information.  (CCC Ex. 18).  Instead, counsel for Gevo asserted that yeast meeting the description of those disclosed by Butamax in the exchange would infringe Gevo's asserted patents, and insisted on maintaining the Counterclaims.  Gevo also insisted that its proposed claim construction could not be cited.  (ACC ¶84).  Gevo based (and continues to base) its position on its claim construction, which is so objectively unreasonable that Gevo itself has refused to make this construction available to either the Court or the public.  (ACC ¶84).

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(c)

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."  *Venetec International, Inc. v. Nexus Medical, LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008).  Judgment on the pleadings is appropriate to dispose of claims when the pleadings show that the parties' only disputes concern questions of law to be resolved by the Court.  *Jang v. Boston Scientific Scimed, Inc.*, C.A. No. 10-681-SLR, 2011 WL 4527319, at *3 (D. Del. Sept. 30, 2011) (granting judgment on the pleadings where dispute could be resolved through interpretation of unambiguous contact provisions); *see also Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 321 F. Supp. 2d 612, 618 (D. Del. 2004) (granting judgment on the pleadings of no inducement of patent infringement as a matter of law).

A motion for judgment on the pleadings is governed by the same standards that apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, 525 F. Supp. 2d 680, 684 (D. Del. 2007).  Under this standard, the Court should grant judgment on the pleadings with respect to Gevo's Counterclaims because, drawing reasonable inferences in

Gevo's favor, the pleadings do not plausibly give rise to Gevo's claimed entitlement to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Gevo has offered no theory of infringement that can withstand Rule 12 scrutiny. As is explained below, there is no reasonable interpretation of Gevo's patent claims that can cover the undisputed characteristics of the only Butamax and DuPont products accused of infringement.[8] Judgment on the pleadings for a declaratory judgment of non-infringement is proper in this situation because claim construction -- the only remaining subject of dispute -- is a question of law. *Jang*, 2011 WL 4527319, at *7-8.  *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) ("[w]here the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction" and becomes a question of law).  Everything that the Court needs to decide the relevant legal questions -- the patents, the critical parts of the file histories, and the salient details of the accused products -- are attached to or incorporated in the pleadings. *Monec Holding A.G. v. Apple, Inc.*, 1:09-cv-00312 LMB-JFA (D.I. 22-23, 52-53) (E.D. Va. July 17, 2009) (granting, without opinion, Apple, Inc.'s motion for judgment on the pleadings or, in the alternative, summary judgment, where the pleadings and exhibits thereto showed that no reasonable construction of plaintiff's claim limitation could conceivably cover the accused product) (judgment later vacated pursuant to terms of a settlement agreement between the parties).  Accordingly, the Court should save the significant time and expense of a lengthy litigation by deciding at the outset the only issues that have actually been raised -- whether any

---

[8]     To the extent Gevo may purport to have some other theory about an unidentified product, such theory is not supported by the pleadings. *See, e.g., SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

reasonable interpretation of Gevo's asserted claims can capture yeast organisms <u>not</u> expressing a

KIVD enzyme from *L. lactis* and <u>not</u> recombinantly overexpressing genes for Aft proteins.[9]

## B.    Literal Infringement

Butamax and DuPont's products do not literally infringe Gevo's asserted claims unless every limitation set forth in a Gevo claim is found in the accused products, exactly. *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Because the '375 and '376 patents each have only one independent claim (claim 1 of each patent), for purposes of the present motion, Butamax and DuPont need only show that the accused products do not meet one limitation of the first claim of each Gevo patent. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.").

## C.    Infringement Under the Doctrine of Equivalents

A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997). Here, however, well-established limits to application of the doctrine of equivalents make that doctrine unavailable to Gevo.

Where a patent's prosecution history shows that an applicant narrowed the scope of the claims to secure the patent, these acts create a presumption that the patentee is estopped from

---

[9]    Butamax and DuPont should additionally prevail on this motion because claims like Gevo's, which rely not on evidence but on an assertion "that '[a] reasonable opportunity for further investigation or discovery is likely to provide evidentiary support,' . . . do not state a claim for [patent] infringement," sufficient to withstand a Rule 12(b)(6) challenge. *In re Papst Licensing GMBH & Co. KG Litig.*, 585 F. Supp. 2d 32, 35 (D.D.C. 2008) (dismissing patent infringement pleadings substantially identical to Gevo's for failure to state a claim). Gevo's claims "merely speculate" that Butamax and DuPont "might have infringed or be infringing." *Pabst*, 585 F. Supp. 2d at 35.

claiming under the doctrine of equivalents "the territory between the original claim and the amended claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 740 (2002). A patentee can rebut the *Festo* presumption of total surrender only if it can show that 1) the equivalent was unforeseeable at the time of the narrowing amendment; 2) the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question; or 3) other reasons suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (en banc). Whether a patentee has rebutted the presumption presents a question of law to be determined by the Court. *Id.* at 1367-68.

Additionally, the range of equivalents claimed by a patentee cannot extend so far as to ensnare the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684-85 (Fed. Cir. 1990) *overruled in part on other grounds, Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993). In analyzing whether the prior art restricts the range of possible equivalents to a claim limitation, "it may be helpful to conceptualize the limitation on the scope of equivalents by visualizing a *hypothetical* patent claim, sufficient in scope to *literally* cover the accused product." *Id.* at 684 (emphasis in original). "The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO over the prior art." *Id.* "If not, then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents." *Id.* The rationale for this rule is that "a patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *Id.*

The doctrine of equivalents cannot be applied so broadly as to effectively eliminate a claim element in its entirety. *Warner-Jenkinson Co.*, 520 U.S. at 29. In other words, "an

element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citing *Warner-Jenkinson*, 520 U.S. at 29). To determine whether finding infringement under the doctrine of equivalents would vitiate a claim limitation, courts consider the totality of the circumstances, evaluating "whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Id.* at 1359.

Even if Gevo could argue infringement under the doctrine of equivalents here, such argument would fail. The accused products lack any elements that perform substantially the same function in substantially the same way to obtain the same result as the relevant claim limitations, and therefore are not equivalents. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). Gevo has no basis to dispute these facts.

## IV.   NON-INFRINGEMENT OF THE '375 PATENT

### A.   Claims of the '375 Patent

Claim 1 is the only independent claim of the '375 patent, with claims 2 through 7 all depending from claim 1. Claim 1 reads as follows:

> 1.     A recombinant yeast microorganism for producing isobutanol, the recombinant yeast microorganism comprising an isobutanol producing metabolic pathway, wherein said isobutanol producing metabolic pathway comprises the following substrate to product conversions:
>   (i) pyruvate to acetolactate;
>       (ii)     acetolactate to 2,3-dihydroxyisovalerate;
>       (iii)    2,3-dihydroxyisovalerate to α-ketoisovalerate;
>       (iv)     α-ketoisovalerate to isobutyraldehyde; and
>       (v)      isobutyraldehyde to isobutanol;
>   wherein said recombinant yeast microorganism expresses:
>       (a)      an acetolactate synthase to catalyze the conversion of pyruvate to acetolactate;
>       (b)      a ketol-acid reductoisomerase to catalyze the conversion of acetolactate to 2,3-dihydroxyisovalerate;

(c)    a dihydroxy acid dehydratase to catalyze the conversion of 2,3-dihydroxyisovalerate to α-ketoisovalerate;

**(d)    _an α-ketoisovalerate decarboxylase from Lactococcus lactis to catalyze the conversion of α-ketoisovalerate to isobutyraldehyde; and_**

(e)    an alcohol dehydrogenase to catalyze the conversion of isobutyraldehyde to isobutanol;

wherein the recombinant yeast microorganism has been engineered to disrupt, mutate, or delete one or more endogenous pyruvate decarboxylase (PDC) genes, wherein said recombinant yeast microorganism has reduced endogenous PDC activity as compared to the corresponding yeast microorganism that has not been engineered to have reduce endogenous PDC activity, and wherein said recombinant yeast microorganism produces:

(A)    isobutanol at a yield which is at least 10% of the theoretical yield of isobutanol from glucose; and/or

(B)    ethanol at a yield which is 1.8% or less of the theoretical yield of ethanol from glucose.

## B.    Construction of the '375 Patent

Claim element "(d)" of claim 1 of the '375 patent, requires that the claimed recombinant yeast microorganism expresses "an α-ketoisovalerate decarboxylase from _L. lactis_" (See '375 patent at 223:54-56). The meaning of this phrase is clear from the specification, where it is defined by a gene sequence. Example 6 of the '375 patent purportedly demonstrates isobutanol production in yeast "containing the _L. lactis_ KIVD (SEQ ID NO:8)." ('375 patent at 39:1-40:12). Yeast carrying this KIVD sequence were used to produce the isobutanol reported in Example 8. ('375 patent at TABLE EX8B-2 Fermentation # iB301 and iB303). The only reasonable interpretation of the claim language is therefore that a KIVD enzyme from _L. lactis_ is an enzyme that has the amino acid sequence deduced from SEQ ID NO:8 set forth in the specification. (_See_ ACC ¶110, admitting that "the DNA sequence recited in the '375 patent identified as SEQ ID NO:8 encodes a _L. lactis_ KIVD").

Inclusion of this limitation was necessary for allowance. Gevo limited its claims to cover only recombinant yeast cells expressing a KIVD enzyme from _L. lactis_, and not yeast expressing some other KIVD enzyme. The claim that ultimately became claim 1 of the '375 patent was first

11

submitted to the USPTO as application claim 131 (CCCs ¶91) and did not initially include the "KIVD from *L. lactis*" limitation. That claim was rejected by the Examiner as obvious over the prior art. (ACC ¶¶91, 93). In order to overcome this rejection, Gevo argued that when the isobutanol pathway includes a KIVD enzyme from *L. lactis* the "results" -- specifically the ethanol and isobutanol yields shown in Example 8 of the specification -- "were unexpected". (ACC ¶94). Based on this representation, the Examiner indicated that "amending the claims to be limited to the specific KIVD protein used would appear to overcome" the rejections. (ACC ¶95). Gevo amended its claims as indicated and the Examiner allowed the narrowed claims because "one of skill in the art would not have expected the recited isobutanol or ethanol yields" from a pathway using "the *L. lactis* decarboxylase". (*See* ACC ¶98). Accordingly, it is clear from the prosecution history of the '375 patent that the limitation "from *L. lactis*" was made to limit the scope of the claims to a particular enzyme of defined sequence for purposes of patentability.

The claim language, the specification and the prosecution history of the '375 patent all confirm that the limitation "expresses . . . an α-ketoisovalerate decarboxylase from *L. Lactis*" means that the recombinant yeast microorganism must express an enzyme having the distinct characteristics of the enzyme used in the yeast of Example 8. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). It is undisputed that the amino acid sequence of that enzyme is encoded by SEQ ID NO:8 of the '375 patent sequence listing. (ACC ¶110).

**C.   Butamax's Technology Does Not Literally Meet the "KIVD From *L. Lactis*" Limitation**

<div style="background:black;height:3em;"></div>

12

███████████████████████████ (CCCs ¶¶140, 142).[10]  Consequently, the

Butamax yeast strains do not meet this limitation of claim 1 and the accused yeast do not literally

infringe the '375 patent as a matter of law.  *See Bayer AG v. Elan Pharm. Research Corp.*, 212

F.3d 1241, 1247 (Fed. Cir. 2000).

### D. Butamax's Technology Does Not Infringe the "KIVD From *L. Lactis*" Limitation Under the Doctrine of Equivalents[11]

#### 1. Gevo Is Estopped From Arguing That the '375 Patent Claims KIVD Enzymes Other Than KIVD From *L. Lactis*

Because Gevo narrowed the claims of the '375 patent to include only yeast

microorganisms that express a KIVD from *L. lactis*, and because Gevo's narrowing amendment

was made for purposes of patentability, Gevo is presumed to have disclaimed all other KIVD

enzymes.  *See Festo*, 535 U.S. at 733-34.  Gevo cannot rebut this presumption of estoppel.

Gevo's original independent claim in the application that became the '375 patent was not

limited to KIVD from *L. lactis*, and therefore, if allowed, could have covered KIVDs from other

bacterial sources, ████████████████  Having narrowed its claim so as to exclude ███████

███████ Gevo cannot now claim that it was an unforeseeable equivalent.  *Id.*  ("When . . . the

patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in

response to a rejection, he may not argue that the surrendered territory comprised unforeseen

subject matter that should be deemed equivalent to the literal claims of the issued patent.").  The

rationale of this limit to the doctrine of equivalents is that where, as here, "the original

---

[10]     Gevo's denial of CCC ¶¶ 140 and 142-144 is improper and should be deemed admitted. The information in those paragraphs is available on a public database, easily accessible on the internet.  "A fact which is denied for lack of knowledge or information may be deemed admitted if the matter is one to which the party" could "obtain knowledge of [the] fact" through "exert[ion] of reasonable effort."  *Greenbaum v. U.S.*, 360 F. Supp. 784, 788-89 (E.D. Pa. 1973); *see also Reed v. Turner*, 2 F.R.D. 12, 12 (E.D. Pa. 1941); *Porto Transport v. Consolidated Diesel Electric Corp.*, 20 F.R.D. 1, 2 (S.D.N.Y. 1956).

[11]     ████████████████████████████████████████████████████████

application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question." *Id.* at 734. By Gevo's amendment narrowing its claims to KIVD from *L. lactis*, it "recognized and emphasized the difference" between the original and amended claims, "and proclaimed [its] abandonment of all that is embraced in that difference." *Id.* at 740 (citing *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136 (1942)). As a matter of law, Gevo cannot rebut the presumption that it surrendered ███████████.

Moreover, even if Gevo's original claim would not have covered ███████████ ███████████ was not an unforeseeable equivalent. "An equivalent is foreseeable if one skilled in the art would have known that the alternative existed in the field of art as defined by the original claim scope, even if the suitability of the alternative for the particular purposes defined by the amended claim scope were unknown." *Duramed Pharms., Inc. v. Paddock Labs, Inc.*, 715 F. Supp. 2d 552, 560 (S.D.N.Y. 2010) (citation omitted), *aff'd* 644 F.3d 1376 (Fed. Cir. 2011). In *Duramed*, the patentee had narrowed the scope of its claims in response to a prior art rejection during prosecution, from a pharmaceutical composition "coated with a moisture barrier coating" ("MBC") to such a composition "coated with a moisture barrier coating *comprising ethylcellulose*." *Duramed Pharms.*, 644 F.3d at 1377 (emphasis in original). As a result of this narrowing amendment, the Court found that the patentee was presumptively estopped from claiming as equivalents MBC's other than those comprising ethylcellulose. *Id.* at 1379. In response, patentee argued that it could rebut the presumption of estoppel because the particular coating it sought as an equivalent ("PVA") was unforeseeable for use as an MBC *with patentee's particular active ingredient*. *Id.* at 1380-81. The Federal Circuit disagreed, stating that, to be foreseeable, "PVA MBC's need only to have been known in the field of pharmaceutical

14

compositions as of the time of [the] narrowing amendment." *Id.* at 1381.

Here ███████████████████████████████████ was known in the fields of molecular biology and genetic engineering, as it was reported in public databases before the date of Gevo's narrowing amendment. (CCCs ¶¶96, 143-44, Exs. 26-27). Gevo cannot rebut the presumption of estoppel, as ███████████████████ was not unforeseeable.

Nor can there be any argument that "the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question." The purpose of the amendment was to limit the claims to only recombinant yeast microorganisms expressing a KIVD enzyme from *L. lactis*, which allegedly demonstrated unexpected yields of isobutanol and ethanol. Such an amendment, made to overcome a statutory rejection related to the element in question, is not merely tangential to the equivalent in question. *See Talbert Fuel Systems Patents Co. v. Unocal Corp.*, 347 F.3d 1355, 1360 (Fed. Cir. 2003).

Finally, Gevo cannot show "some other reason" that the alleged equivalent could not be claimed. Because the ███████████ was known at the time the narrowing amendment was made, Gevo may not rely on this third basis for rebuttal. *See Amgen Inc. v. Hoescht Marion Roussel, Inc.*, 457 F.3d 1293, 1316 (Fed. Cir. 2006).

2.   Gevo Should Not Be Allowed to Claim Enzymes Other Than KIVD From *L. Lactis* Under the Doctrine of Equivalents, When it Could Not Have Lawfully Obtained Literal Claims to These Other Enzymes

Even if Gevo were not estopped under *Festo*, Gevo cannot capture ███████████ ███ under the doctrine of equivalents because any hypothetical claim that Gevo could have obtained to literally cover ███████████ would also have ensnared the prior art. *Wilson Sporting Goods Co*, 904 F.2d at 683 ("there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art."); *see also Steamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-82 (Fed. Cir. 1999). The specification of the

'375 patent does not disclose ████████████████████████████████████

████████████████████████████████████████ Rather, the only way in

which Gevo could have obtained a claim literally covering ██████████████████████

█████████████████ But a "hypothetical" generic claim of that scope would be

substantively identical to the actual claims that the Patent Examiner expressly rejected over the

prior art. Specifically, the Examiner found that Gevo's original claims, which lacked the "KIVD

from *L. lactis*" limitation, were obvious over at least two prior art references, including

Butamax's '188 patent.[12]  (ACC ¶¶91, 93).  Gevo cannot now obtain, under the doctrine of

equivalents, what it could not lawfully have obtained from the PTO by literal claims.  *Wilson*

*Sporting Goods*, 904 F.2d at 684.

> 3.   A Finding That Enzymes From Other Sources Are Equivalent to Gevo's Claimed
>       KIVD Would Vitiate the "From *L. Lactis*" Limitation

It is additionally improper to find that enzymes from other bacterial sources are

equivalent because such a finding would render the "from *L. lactis*" limitation meaningless by

reading it completely out of the claims.   This is precisely the type of overextension of the

doctrine of equivalents that the claim vitiation doctrine is intended to prevent.  *Freedman Seating*

*Co.*, 420 F.3d at 1358.

In *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*, 541 F.3d 1115 (Fed. Cir. 2008), the

Federal Circuit considered a nearly identical issue, involving a claim limitation to a particular

bacterial source.  The *Carnegie Mellon* patentee  argued that its claim to a recombinant plasmid

encoding an enzyme "wherein the bacterial host cell and *the bacterial source are each E. coli*"

was infringed under the doctrine of equivalents by Roche's plasmid, which caused host cells to

---

[12]    Butamax's '188 patent discloses several enzymes suitable to catalyze the conversion of
α-ketoisovalerate to isobutyraldehyde other than the KIVD from *Lactococcus lactis*,
including indolepyruvate decarboxylase. *See* Tables 1 and 2 of the '188 patent, Ex. A to
Butamax's Complaint (D.I. 1).

express the enzyme from a different bacterial source called "*Taq*." *Id.* at 1128 (emphasis in original). Patentee argued that "the substitution of *Taq* for *E. Coli* was an insubstantial and unimportant change that resulted in an infringing equivalent." *Id.* The Federal Circuit disagreed, and affirmed the district court's finding of non-infringement, writing, "a finding that *Taq* is an equivalent of *E. coli* would essentially render the 'bacterial source [is] *E. coli*' claim limitation meaningless, and would thus vitiate that limitation of the claims." *Id.* at 1129.

Here, as in *Carnegie Mellon*, the bacterial source limitation ("from *L. lactis*") for Gevo's claimed KIVD enzyme would be rendered meaningless by a finding that an enzyme from a different bacterial source infringes as an equivalent.

## V.   NON-INFRINGEMENT OF THE '376 PATENT

### A.   Claims of the '376 Patent

Gevo's Second Counterclaim alleges infringement of the '376 patent. Claim 1 of the '376 patent is the only independent claim of that patent, with claims 2-20 all depending from claim 1. Consequently, as with the '375 patent, no claim of the '376 patent can be infringed unless claim 1 is first infringed. Claim 1 reads as follows:

> A recombinant yeast microorganism comprising a recombinantly overexpressed polynucleotide encoding a dihydroxy acid dehydratase (DHAD), and **recombinantly overexpressed one or more polynucleotides encoding one or more activator of ferrous transport (Aft) proteins** which increase the dehydratase activity of DHAD.

### B.   Construction of the '376 Patent

The relevant limitation of claim 1 of the '376 patent contains 2 key terms for construction: "recombinantly overexpress" and "Aft proteins." The specification defines "overexpression" as referring to "an elevated level" of either mRNAs encoding for proteins or of proteins in the cell, compared to unmodified cells expressing basal levels. *See* '376 patent at 10:50-61. Thus, "recombinantly overexpressed" means engineered to have an elevated level of

mRNA encoding a protein or an elevated level of a protein as a result of a recombinant gene. "Aft proteins" are defined in the '376 specification as "transcription factors," meaning proteins that function to regulate the transcription of other genes. *Id.* at 2:65-3:26, 16:58-62. The disclosure of the '376 patent specifically lists examples of Aft proteins and homologs thereof. *Id* at 2:31-33, 3:44-58, 16:58-60, Table 2; claim 13. Accordingly, the only reasonable interpretation of claim 1 requires that the claimed yeast are engineered to express an elevated level of mRNA encoding the Aft proteins and Aft homologs that are disclosed in the '376 specification and claims, or an elevated level of those proteins.

Gevo may argue that the term "Aft protein" is broad enough to cover proteins produced in response to Aft transcription factors. That argument is wrong. The genes "***regulated by*** an Aft protein or homolog thereof" are termed "Aft regulons." *Id.* at 2:65-3:26 (emphasis added). Aft regulons are clearly distinguished, and listed separately, from Aft proteins in the '376 specification. *See, e.g., id.* at 3:3-13; 4:25-42; 10:56-61; Table 1; and 22:42-58. There is no overlap between the proteins characterized in the specification as Aft proteins and those characterized as Aft regulons. *See, e.g., id.* at Tables 2 and 1. As shown in the chart below, overexpression of Aft proteins and overexpression of proteins regulated by Aft are separate and distinct embodiments.

| '376 patent at 3:44-49 | '376 patent at 4:25-32 |
|---|---|
| In one embodiment, the invention is directed to a recombinant microorganism for producing isobutanol, wherein said recombinant microorganism comprises an isobutanol producing metabolic pathway and wherein said microorganism is engineered to overexpress one or more polynucleotides ***encoding one or more Aft proteins or homologs thereof.*** | In another embodiment, the invention is directed to a recombinant microorganism for producing isobutanol, wherein said recombinant microorganism comprises an isobutanol producing metabolic pathway, wherein said microorganism has been engineered to overexpress one or more polynucleotides ***encoding one or more proteins or homologs thereof regulated by an Aft protein or homolog thereof.*** |

Moreover, during prosecution of the '376 patent, Gevo voluntarily cancelled its original application claims to microorganisms engineered to overexpress genes encoding proteins "**regulated by an Aft protein**," (*see*, *e.g.*, original claims 11-17, CCC Ex. 6 at p. 144-45), and never reinstated claims to overexpressing genes regulated by Aft. In light of the disclosure of the specification and the prosecution history, the term "activator of ferrous transport (Aft) proteins" in the claims of the '376 patent cannot reasonably be construed to encompass the Aft regulon or proteins that are encoded by members of the Aft regulon.

**C.  Butamax's Technology Does Not Literally Meet the "Recombinantly Overexpressed Gene for Aft" Limitation of Claim 1 of the '376 Patent**

The accused yeast strains ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ (CCC ¶146). As such, these strains do not meet every limitation of claim 1 of the '376 patent, and do not literally infringe as a matter of law.

**D.  Butamax's Technology Does Not Infringe the "Recombinantly Overexpressed Gene for Aft" Limitation Under the Doctrine of Equivalents**

1.  Gevo Is Estopped From Arguing That the '376 Patent Reads On "Aft Regulons"

Because it cancelled its claims to microorganisms engineered to overexpress genes encoding <u>Aft regulons</u> during prosecution of the '376 patent, Gevo is now estopped from arguing

---

[13]  Though Gevo improperly pleads that it lacks knowledge or information sufficient to form a belief as to this allegation "and therefore denies it" (ACC ¶145), Gevo has not put forth any infringement theory other than its contention that strains not recombinantly overexpressing a gene for Aft still infringe claim 1 of the '376 patent. (*See* ACC ¶¶165).

that the allowed claims of the '376 patent cover Aft regulon genes under the doctrine of equivalents. *Festo,* 344 F.3d at 1366. Where, as here, "the prosecution history record reveals no reason for the narrowing amendment, *Warner-Jenkinson* presumes that the patentee had a substantial reason relating to patentability." *Id.* at 1366-67. Moreover, "a patentee's rebuttal of the *Warner-Jenkinson* presumption is restricted to the evidence in the prosecution history record." *Id.* at 1377. Since Gevo can point to no evidence in the prosecution history of the '376 that contradicts the presumption that it excluded proteins "regulated by an Aft protein" from its claims for reasons relating to patentability, estoppel applies here.

2.    Finding That Butamax's Technology Is Equivalent to the Cells of the '376 Vitiates the "Recombinantly Overexpressed Gene for Aft" Limitation

Butamax's yeast strains, which do not recombinantly overexpress a gene encoding an Aft protein, cannot be found to be equivalents to Gevo's claimed strain without reading out the "Aft" limitation altogether. As explained above, the doctrine of equivalents cannot be used to vitiate a claim element. *Supra* at 9-10; *Warner-Jenkinson,* 520 U.S. at 29. Gevo's only proffered theory of infringement of the '376 patent – that a yeast microorganism not recombinantly overexpressing a gene for Aft can still infringe (*see, e.g.,* ACC ¶¶165, 168) – therefore cannot withstand scrutiny as a matter of law. *Fraser v. High Liner Foods (USA), Inc.,* 337 Fed. Appx. 883, 888, 2009 WL 1951894 (Fed. Cir. July 8, 2009), (affirming summary judgment of non-infringement where plaintiff's "theory of infringement requires ignoring . . . entire claim elements altogether"), *cert. denied* 130 S.Ct. 2411 (2010).

## VI.    CONCLUSION

For all of the foregoing reasons, Butamax and DuPont respectfully request that, pursuant to Rule 12(c), the Court grant this motion for judgment on the pleadings as to Gevo's First and Second Counterclaims.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Leora Ben-Ami
Christopher T. Jagoe
Hank Heckel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

By:   _/s/ David E. Moore_____
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE 19801
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys for Plaintiff/Counterclaim Defendant
Butamax™ Advanced Biofuels LLC*

*Attorneys for Plaintiff/Counterclaim Defendant
Butamax™ Advanced Biofuels LLC and
Counterclaim Defendant E. I. du Pont de
Nemours and Company*

Dated: January 20, 2012
PUBLIC VERSION Dated: January 27, 2012
1044857 / 36429

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on January 27, 2012, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on January 27, 2012, the attached document was electronically

mailed to the following person(s)

| | |
|---|---|
| Thomas Grimm<br>MORRIS, NICHOLS, ARSHT &<br>TUNNELL LLP<br>1201 North Market Street<br>P. O. Box 1347<br>Wilmington, DE  19899-1347<br>tgrimm@mnat.com | James P. Brogan<br>Ann Marie Byers<br>Michelle Rhyu<br>Carolyn V. Juarez<br>Cooley LLP<br>380 Interlocken Crescent, Suite 900<br>Broomfield, CO  80021<br>jbrogan@cooley.com<br>abyers@cooley.com<br>mrhyu@cooley.com<br>cjuarez@cooley.com<br>zGevoButamaxLitigation@cooley.com |

By:  */s/ David E. Moore* _____
        Richard L. Horwitz
        David E. Moore
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, Delaware 19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

999101 / 36429