IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BUTAMAX™ ADVANCED BIOFUELS LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 11-54-SLR ) |
| GEVO, INC., | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this 6th day of July, 2012, in consideration of Butamax's Emergency Motion to Maintain the Status Quo Ante Pending Appeal and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 377) is granted, for the reasons that follow:

1. **Background.** On September 22, 2011, plaintiff Butamax filed a motion for preliminary injunction which sought to enjoin defendant Gevo from infringing plaintiff's '899 patent. (D.I. 61) On June 19, 2012, following a two-day hearing and an evaluation of the parties' post-hearing submissions, the court issued a memorandum opinion and order denying plaintiff's motion. (D.I. 369, D.I. 370) In the wake of the court's decision, plaintiff appealed to the Federal Circuit (D.I. 376) and filed the motion presently at issue.

2. **Standard.** Rule 62(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "While an appeal is pending from an interlocutory order or final judgment

that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." The court is called to evaluate four factors when determining whether to maintain the status quo pending appeal. These include: "1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The factors, however, need not be given equal weight. *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). In fact, "[w]hen harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" *Id.* (quoting *Hilton*, 481 U.S. at 776). In short, "the analysis applied is flexible. The 'factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested.'" *Honeywell Intern., Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 548 (D. Del. 2005) (quoting *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed. Cir. 1988)). The Federal Circuit has also indicated "that the four stay factors can effectively merge" into a more straightforward inquiry. *Standard Havens*, 897 F.2d at 513 (citing *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987). As the Federal Circuit stated in *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987), "[i]n considering whether to grant a stay pending

2

appeal, this court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public."

3. **Discussion.** With respect to plaintiff's likelihood of success on the merits, the court recognizes that both its infringement and invalidity analyses were premised on the construction of certain key claim limitations. (See D.I. 369 at 9, 19) The court further recognizes that claim construction is a question of law subject to *de novo* review. *Toshiba Corp. v. Imation Corp.*, - - F.3d - -, Civ. No. 2011-1204, 2012 WL 2087187, at *7 (Fed Cir. June 11, 2012) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455–56 (Fed. Cir.1998) (en banc)). Thus, while the court concluded in its memorandum opinion that "plaintiff does not hold a valid patent, nor would the defendant infringe if it did,"[1] the court readily acknowledges that the Federal Circuit could disagree with the court's construction of these key limitations and, consequently, its ultimate conclusions.[2]

4. With respect to injury, the court previously recognized that there was an emerging isobutanol market and an invaluable opportunity to be the first to exploit the

---

[1] Plaintiff focuses on the court's "scientifically untenable" (D.I. 378 at 9) construction of the term acetohydroxy acid isomeroreductase. It continues to be the court's opinion that plaintiff, by acting as it own lexicographer, created a Hobson's choice for the court, that is, choosing between a scientifically imprecise construction and a construction that gives no guidance to the public by eliminating the distinction between enzymes that "use NADPH," those that "use NADH," and those that use "NADPH and/or NADH."

[2] Defendant argues that *de novo* review of claim construction is not a sufficiently extraordinary circumstance to warrant a stay. (See D.I. 390 at 7 citing, inter alia, *Chamberlain Group, Inc. v. Lear Corp.*, 2007 WL 1238908, at *5 (N.D. Ill. Apr. 25, 2007)). The court agrees. However, the court notes that a strong showing of irreparable harm combined with the Federal Circuit's *de novo* review, can be sufficient. See *supra*, pg. 2; *see also Chamberlain Group*, 2007 WL 1238908, at *2; *5.

market. It has become abundantly clear, however, that there are multiple isobutanol markets[3] and that the parties' business plans are very different in terms of which markets they have targeted. Plaintiff, a joint venture between the DuPont Company and BP, has as its sole target the automotive fuel blending industry, with plans to enter this market commercially by 2014. Defendant's business plan is not so limited. In this regard, defendant has opened an operating isobutanol plant at its Luverne, Minnesota facility with immediate plans to sell the bio-based isobutanol produced at said facility to Sasol for chemical applications. Defendant also intends to "seed" the other markets, e.g., by providing samples of bio-based isobutanol for testing. (See, e.g., D.I. 390 at 16)

5. The court has concluded that, if the Federal Circuit reverses and finds the "899 patent valid and infringed, plaintiff will suffer irreparable harm if defendant is allowed to even seed the automotive fuel blending market, as said market is intended to account for 100% of its future commercial activity. Defendant has argued to the contrary, based on the representation that 95% of its sales are for non-fuel purposes and the remaining 5% of its activities should be of no moment to plaintiff's business plan. When faced with the prospect of enjoining the remaining 5% of its activities, however, defendant does not dismiss the remaining 5% of its activities, but rather describes them as "critical to developing relationships in the long term with refiners and with validating [defendant's] commercial plan." (D.I. 395 at 2) Despite defendant's excellent word-smithing, the court rejects the notion that defendant's activities in the

---

[3]Including the solvent and specialty chemicals market and the jet fuel, marine fuel and automotive fuel blending markets.

fuel markets can be critical to defendant's business survival but not critical to plaintiff's future success. Indeed, logic would dictate the opposite, that is, any success defendant has in the fuel markets would necessarily be at the expense of plaintiff's ability to develop the same business relationships.

6. In balancing the equities, the court takes the following into consideration. From the outset of these proceedings, defendant represented to the court that "it has committed to initial entry into the solvent and specialty chemicals market," making a preliminary injunction unnecessary because the parties were not "head-to-head competitors" in the automotive fuel blending industry. (D.I. 154 at 21-22; D.I. 399 at 6-7) Defendant was allowed to continue its Luverne facility retrofit based on these representations, and the stay previously imposed by the court likewise reflected such. (D.I. 350) Although the court recognizes that defendant is in the process of "developing relationships with refiners and retailers to perform automotive trials in an effort to show potential customers and investors the advantages of butanol-based gasoline"[4] (D.I. 369 at 24), nevertheless, it does not strike the court as inequitable to require defendant to restrict its business efforts pending appeal consistent with its representations in this litigation. Moreover, the information provided to the court at oral argument[5] provides less than a compelling case of cause-and-effect vis a vis the imposition of a stay; to wit,

---

[4] Apparently by providing samples of bio-based isobutanol for testing in the automotive fuel blending industry, with the goal of entering that market commercially in late 2014. (D.I. 390 at 16)

[5] The court notes that all of the information provided was hearsay, from that provided in defendant's sealed declaration to plaintiff's sampling of media coverage related to defendant's secondary offering of stock to raise capital.

defendant's financial condition is just as likely a reflection of the renewable fuels market generally as it is of the instant litigation specifically (especially if one takes into consideration the sophistication of the market players).

6. **Conclusion.** In light of the above considerations, the court finds that the equities weigh in favor of continuing a modified stay pending appeal.[6] This stay, however, is conditioned on plaintiff's seeking from the Federal Circuit an **expedited** appeal (if it has not already done so) and posting a bond with the court. Rule 62(c) requires that a bond be set "to secure the opposing party's rights." Although the amount of bond is a discretionary determination made by the court, there should be some basis for such determination. In this regard, defendant suggested a bond in the amount of $105 million, based on "the minimum that [it] would raise in its planned stock offering, the entirety of which is now at risk."[7] (D.I. 390 at 15 n.9) Plaintiff did not respond to this proposal, except to suggest the need for a separate bond hearing. (D.I. 393 at 4). Given the soaring costs of these interim, preliminary injunction proceedings, the court declines to add yet another layer of costs to the parties by scheduling a hearing. However, the parties do need to give the court further guidance on the issue, as directed below.

THEREFORE, IT IS ORDERED that, on or before **July 20, 2012**, the parties shall submit supplemental papers, no longer than ten pages in length, regarding the

---

[6]The public interest is balanced between the goal of enforcing patent rights and the potential stifling of technological entrepreneurship through litigation.

[7]The court understands that the offering closed no later than Thursday, July 5, 2012. Therefore, the record should reflect whether the offering was successful or not.

appropriate amount of bond to be posted.

IT IS FURTHER ORDERED that, pending appeal, defendant Gevo, Inc., and its officers, agents, servants, employees, attorneys, successors, assigns, and those persons in active concert or participation with them who received notice of the instant order by personal service or otherwise, shall not deliver, provide, distribute, ship, release, or transfer in any way bio-based isobutanol produced at the Luverne facility from recombinant yeast microorganisms to any third party for any use or purpose related to the automotive fuel blending market.

_____
United States District Judge