IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BUTAMAX™ ADVANCED BIOFUELS LLC,<br><br>    Plaintiff/Counterclaim<br>    Defendant<br><br>v.<br><br>GEVO, INC.,<br><br>    Defendant/Counterclaim<br>    Plaintiff<br>v.<br><br>E.I. DU PONT DE NEMOURS AND COMPANY,<br><br>    Counterclaim Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 11-54-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

At Wilmington this 13th day of February, 2013, having considered defendant Gevo, Inc.'s ("defendant") motion for leave to amend the pleadings and the papers submitted therewith;

IT IS ORDERED that said motion (D.I. 388) is denied, as follows:

1. **Background.** On January 14, 2011, Butamax™ Advanced Biofuels LLC ("plaintiff") filed suit in this district against defendant alleging infringement of United States Patent No. 7,851,188 ("the '188 patent"). (D.I. 1) Plaintiff is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware. (D.I. 41 at ¶ 1) Defendant is a

corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Englewood, Colorado. (Id. ¶ 2)

2. Defendant answered plaintiff's complaint on March 25, 2011. (D.I. 10) On August 11, 2011, plaintiff filed an amended complaint. (D.I. 41) The amended complaint added a count of infringement; specifically, plaintiff alleged that defendant also infringed United States Patent No. 7,993,889 ("the '889 patent"). (Id.) Defendant answered the amended complaint on September 13, 2011 and counterclaimed against plaintiff alleging infringement of United States Patent Nos. 8,017,375 ("the '375 patent") and 8,017,376 ("the '376 patent"). (D.I. 52) Plaintiff answered the counterclaims on November 18, 2011 and counter-counterclaimed against defendant seeking a declaratory judgment on non-infringement and invalidity of the '375 patent and the '376 patent. (D.I. 117) On December 9, 2011, defendant answered the counter-counterclaims. (D.I. 130)

3. Per the court's scheduling order, amendments to the pleadings were due by March 30, 2012 and fact discovery closed on June 15, 2012. (D.I. 18) On June 21, 2012, upon the grant of its motion to amend, plaintiff amended its answer to the counterclaims and the counter-counterclaims adding affirmative defenses and counter-counterclaims of inequitable conduct.[1] (D.I. 372) Currently before the court is defendant's motion seeking to amend its answer and counterclaims to include an affirmative defense and counterclaim of inequitable conduct, filed June 29, 2012. (D.I. 388) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

---

[1] Plaintiff timely filed a motion for leave to amend its answer on March 30, 2012, which was granted. (D.I. 268; D.I. 371)

2

4. **Standard**. Rule 15(a) of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend the pleadings] when justice so requires." The factors to consider in weighing a motion for leave to amend are well settled: (1) whether the amendment has been unduly delayed; (2) whether the amendment would unfairly prejudice the non-moving party; (3) whether the amendment is brought for some improper purpose; and (4) whether the amendment is futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). According to the Federal Circuit, a "trial court should grant leave to file absent a substantial reason for denial . . . ." *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1319 (Fed. Cir. 2010).

5. Rule 16(b) of the Federal Rules of Civil Procedure provides that after the entry of a scheduling order, the "schedule may be modified only for good cause and with the judge's consent." For post-deadline amendments, a party "must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply . . . ." *Pressure Prods. Med. Supplies*, 599 F.3d at 1314 (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.2003)); *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 339-40 (3d Cir. 2000) (affirming the district court's denial of plaintiff's motion for leave to amend the complaint, filed six months after the deadline without good cause).

6. "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). In a case involving nondisclosure of information, the accused infringer must prove by clear and

convincing evidence that the applicant knew of the information, "knew that it was material, and made a deliberate decision to withhold it." *Id.* "[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Id.* at 1291. With respect to intent, "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id. (citation omitted)* (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

7. Of course, the standard for proving inequitable conduct is a more rigorous one than the standard for pleading inequitable conduct; apparently, even the Federal Circuit has been tempted to confuse the same. *See, e.g., Pressure Prods. Med. Supplies*, 599 F.3d at 1320 ("[T]his court has issued significant opinions requiring specific and demanding showings of evidence before a party may **assert** the defense of inequitable conduct," citing *Star Scientific*, 537 F.3d at 1365, a case where the district court's final judgment of inequitable conduct was under review) (emphasis added). Accordingly, the proper standard of review is that articulated in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), to wit, that "Rule 9(b) requires the identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

8. **Discussion.** As defendant's motion was filed three months after the deadline to amend pleadings, defendant must show good cause under Rule 16(b) for its delay.

4

Defendant asserts that its motion is timely because: (1) it is "based on evidence first produced by Butamax on or after March 29, 2012;" (2) the documents were produced in response to timely filed document requests propounded in June 2011; (3) plaintiff "acknowledged that it was intentionally withholding such documents on the (unfounded) basis that they were not relevant;" and (4) earlier produced documents were not sufficient to meet the pleading standard of Rule 9(b). (D.I. 389 at 4-5) In response, plaintiff argues that the documents defendant relies on are cumulative "of what has been publically disclosed to the PTO" and "of other internal documents that plaintiff produced well in advance of March 29, 2012." (D.I. 416 at 12) Defendant alleges the documents to which plaintiff refers contained only one relevant slide and that the previously produced slide did not enable it to comply with the higher standard of pleading inequitable conduct. (D.I. 449 at 8-9)

9. Defendant alleges, and plaintiff does not contest, that plaintiff produced documents to defendant on March 29, 2012 via mailed hard drive. (D.I. 389 at 2-3 & n.1, ex. 2) Further, between March 29, 2012 and June 15, 2012, plaintiff produced "over 210,000 pages--more than a third of its total document production to date." (*Id.* at 3) Nevertheless, plaintiff argues that defendant should have brought its motion at least before the close of fact discovery on June 15, 2012. (D.I. 416 at 13) Defendant has offered an explanation for the delay, namely that it had to sift though voluminous documents in order to confirm with particularity its theory of inequitable conduct.

10. The court concludes that defendant's reluctance to rely on one slide, that it deemed ambiguous, for its inequitable conduct allegations is consistent with its obligations under Rule 9(b). *Compare Enzo Life Sciences., Inc. v. Digene Corp.*, 270 F.

5

Supp. 2d 484, 489 (D. Del 2003) (allowing defendant to amend its pleading to add affirmative defenses and counterclaims of inequitable conduct six months after the deadline and after the close of fact discovery, when the delay was sufficiently explained and justified), with *Asahi Glass, Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420-21 (D. Del. 2011) (denying leave to amend its affirmative defenses and counterclaims six months after the deadline and after the close of fact discovery, when the delay was largely unexplained and undue). The court finds, therefore, that defendant has offered sufficient explanation for the three-month delay in its filing.

11. Plaintiff argues that it will be prejudiced because it will be deprived of an "opportunity to conduct a meaningful investigation," including asking relevant questions of defendant's inventors Jun Urano and Aristos Aristidou (who have already been deposed), and the new theories will be disruptive, adding unnecessary expense and complexity to the matter. (D.I. 416 at 13-14) The court is not convinced that plaintiff will be prejudiced by this amendment. As defendant points out, "the inequitable conduct analysis concerns Butamax's conduct in prosecuting its own patents" and the actions and knowledge of its own scientists. (D.I. 449 at 9) Information regarding its own inequitable conduct lies largely with plaintiff. *See Roquette Freres v. SPI Pharma, Inc.*, Civ. No. 06–540, 2009 WL 1444835, at *4 (D. Del. May 21, 2009) (allowing defendant's amendment to add a defense of inequitable conduct and holding that "[i]nformation regarding the inventors' knowledge and what they did or did not do regarding the patent specification and their representations to the PTO would primarily

be within the control of plaintiff).[2]

12. Turning to whether defendant has pled inequitable conduct with sufficient particularity and whether its allegations of inequitable conduct are futile, the court concludes that the proposed amendment does not satisfy the heightened pleading standard. Specifically, defendant has not sufficiently pled the "who" of the pleading standard. Defendant alleges plaintiff, through Christine M. Lhulier and S. Neil Feltham and the named inventors (D.I. 388, ex. A at ¶¶ 19, 31-32):[3] (1) withheld knowledge (*id.* ¶¶ 19, 32-33) that the claimed pathway from pyruvate to isobutanol naturally occurred in yeast (*id.* ¶¶ 22-23, 32-33); (2) had the knowledge during the prosecution of the patents (*id.* ¶¶ 23, 25-28); (3) referred to this knowledge in internal documents (*id.* ¶¶ 22-23, 26-29, 32-33); and (4) purposefully omitted this knowledge during representations to the PTO (*id.* ¶¶ 22-23, 30-33).

13. To show knowledge and intent, defendant "must include sufficient allegations of underlying facts from which a court may reasonably infer that **a specific individual** (1) knew of the withheld material information or of the falsity of the material

---

[2] Plaintiff's argument that this amendment will require more time and additional costs is not sufficient to show prejudice.

[3] Specifically, defendant states:

> The file histories of the '188 and '889 patents indicate that the following persons were involved in communicating with the USPTO during prosecution of this application: Christine M. Lhulier and S. Neil Feltham. Butamax and DuPont, by and through these persons and the named inventors, committed inequitable conduct leading to the issuance of the '188 and '889 patents.

(D.I. 388, ex. A ¶ 19) Defendant also alleges that each of the named inventors "reviewed and/or contributed to documents discussing the existence of the claimed natural pathway from pyruvate to isobutanol in yeast." (*Id.* ¶¶ 30-31)

misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1328-29 (emphasis added); 37 C.F.R. § 1.56(a), (c) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO]," including the inventors). Defendant relies on three PowerPoint slides taken from two of plaintiff's internal presentations to show that plaintiff had the general knowledge and withheld it. These presentations have not been attributed to the individuals named by defendant, as only one of the authors of one of the presentations is a named inventor.[4] As the presentation consisted of 61 slides and listed four authors, it is tenuous to attribute the information on one slide to one particular author. Further, defendant lists numerous publications showing "[t]he existence of the claimed natural pathway," but does not allege that these publications were improperly withheld during examination. (D.I. 388, ex. A at ¶ 24) At least one of these references specifically appears in the specification of both the '188 and '889 patents, casting doubt on whether the general knowledge at issue was actually withheld during prosecution.[5] (*See* '188 patent, col 12:55; '889 patent, col 12:27)

14. Importantly, defendant has also failed to establish "the specific intent to deceive," which must be "the single most reasonable inference able to be drawn from

---

[4] The author of the first presentation is not an individual alleged to have withheld information. The other presentation, consisting of 61 slides, lists four authors including Vasantha Nagarajan, named inventor of both the '188 and '889 patents. (D.I. 388 ex. A at ¶ 27)

[5] The court notes that plaintiff alleges that another publication listed by defendant is substantially similar to a publication, by the same author, that was disclosed during prosecution. (D.I. 416 at 10)

8

the evidence." *Therasense*, 649 F.3d at 1291. The court concludes that the relationship between the general knowledge allegedly depicted on internal presentation slides and the named individuals is too tenuous to show ownership of the knowledge or attribute a specific intent to deceive. This conclusion is reinforced by the availability of such general knowledge in other publications, at least one of which was cited in the patent specifications.

15. **Conclusion.** Based on the foregoing, defendant's allegations fall short of the heightened pleading standard required for inequitable conduct. Defendant's motion for leave to amend its pleading is denied.

                                                                                        _/s/_____
                                                                           United States District Judge