## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BUTAMAX(TM) ADVANCED BIOFUELS LLC, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.  11-54-SLR-MPT |
| v. | ) ) | |
| GEVO, INC., | ) ) | |
| Defendant. | ) ) | |

## FINAL JURY INSTRUCTIONS[1]

<table>
<tr><td>

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff/Counterclaim
Defendant Butamax<sup>TM</sup> Advanced Biofuels LLC*

</td><td>

Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19899
Tel: (302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com

*Attorneys for Defendant/Counterclaim
Plaintiff Gevo, Inc.*

</td></tr>
</table>

Dated:  March 15, 2013
1098680 / 36429

---

[1]  Both parties reserve the right to provide proposed amended instructions following the Court's rulings on *Markman* and summary judgment issues and as trial otherwise proceeds.  Both parties further reserve the right to provide additional argument and authority regarding their proposed disputed instructions, as well as additional objections to the other party's proffered instructions.

## TABLE OF CONTENTS

I.    GENERAL INSTRUCTIONS .................................................................................3

    A.    Introduction .................................................................................3

    B.    Jurors' Duties..............................................................................4

    C.    Evidence Defined ........................................................................5

    D.    Direct and Circumstantial Evidence ..........................................6

    E.    Consideration of Evidence .........................................................7

    F.    Use of Notes ...............................................................................8

    G.    Credibility of Witnesses.............................................................9

    H.    Number of Witnesses ...............................................................11

    I.    Expert Witnesses......................................................................12

    J.    Deposition Testimony ..............................................................13

    K.    The Parties and Their Contentions............................................14

    L.    Burdens of Proof.......................................................................15

II.    THE PATENT CLAIMS ......................................................................................17

    A.    Patent Claims Generally............................................................17

    B.    Dependent and Independent Claims ..........................................18

        1.    Butamax's Proposed Instruction.................................18

        2.    Gevo's Proposed Instruction ......................................19

    C.    Open-Ended or "Comprising" Claims .......................................20

    D.    Claim Construction ...................................................................21

III.    PATENT INFRINGEMENT .................................................................................22

    A.    Overview ...................................................................................22

        1.    Butamax's Proposed Instruction .................................22

        2.    Gevo's Proposed Instruction.......................................24

    B.    Direct Infringement by Literal Infringement..............................25

        1.    Butamax's Proposed Instruction .................................25

        2.    Gevo's Proposed  Instruction......................................27

    C.    Infringement Under the Doctrine of Equivalents ...........................29

        1.    Butamax's Proposed Instruction .................................29

        2.    Gevo's Proposed Instruction.......................................31

    D.    Infringement Despite Defendant's Improvements or Patents on Improvements ...............................................................................32

|   | 1. | Butamax's Proposed Instruction | 32 |
|   | 2. | Gevo's Proposed Instruction | 33 |
| IV. | INVALIDITY | | 34 |
| A. | Introduction | | 34 |
| B. | Affirmative Defense of Invalidity Generally | | 35 |
|   | 1. | Butamax's Proposed Instruction | 35 |
|   | 2. | Gevo's Proposed Instruction | 36 |
| C. | Prior Art | | 37 |
|   | 1. | Butamax's Proposed Instruction | 37 |
|   | 2. | Gevo's Proposed Instruction | 38 |
| D. | Anticipation | | 40 |
|   | 1. | Butamax's Proposed Instruction | 40 |
|   | 2. | Gevo's Proposed Instruction | 43 |
| E. | Obviousness | | 46 |
|   | 1. | Butamax's Proposed Instruction | 46 |
|   | 2. | Gevo's Proposed Instruction | 52 |
| F. | Obviousness – Objective Criteria Concerning Non-Obviousness (Secondary Considerations) | | 56 |
|   | 1. | Butamax's Proposed Instruction | 56 |
|   | 2. | Gevo's Proposed Instruction | 58 |
| G. | Lack of Written Description | | 61 |
|   | 1. | Butamax's Proposed Instruction | 61 |
|   | 2. | Gevo's Proposed Instruction | 62 |
| H. | Non-Enablement | | 64 |
|   | 1. | Butamax's Proposed Instruction | 64 |
|   | 2. | Gevo's Proposed Instruction | 66 |
| V. | DELIBERATION AND VERDICT | | 68 |
| A. | Introduction | | 68 |
| B. | Unanimous Verdict | | 69 |
| C. | Duty to Deliberate | | 70 |
| D. | Court Has No Opinion | | 72 |

I.      GENERAL INSTRUCTIONS

A.      Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

**B.     Jurors' Duties**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented. I will instruct you about the burden of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

4

### C.      Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, any facts that the parties agreed to by stipulation, and any facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things.

Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

### D.     Direct and Circumstantial Evidence

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### E.       Consideration of Evidence

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**F.      Use of Notes**

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else.

Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.

Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented. Your notes are valuable only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

### G.    Credibility of Witnesses

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief.

Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an

innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### H.        Number of Witnesses

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

I.       **Expert Witnesses**

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field – he or she is called an expert witness – is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

Some witnesses may offer both factual and opinion testimony.  You should give such testimony the weight you think it deserves based on the factors I have described.

### J.    Deposition Testimony

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played. This testimony must be given the same consideration you would give it had the witness personally appeared in court.

Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

### K.     The Parties and Their Contentions

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is Butamax™ Advanced Biofuels LLC, which I may refer to as "Butamax" or "plaintiff."

Defendant is Gevo, Inc., which I may refer to as "Gevo" or "defendant."

Plaintiff is the owner of U.S. Patent No. 7,851,188, which I will refer to as "the '188 patent" and U.S. Patent No. 7,993,889, which I will refer to as the '889 patent.  I may refer to these collectively as "the patents-in-suit."

Defendant has made and used certain microorganisms.  I may refer to these products collectively as the accused products.  Defendant has also practiced a process using the microorganisms.  I may refer to this as the accused process.

Plaintiff contends that defendant's accused products and accused process infringe claims 1-4, 13-15, 17-25 and 34-36 of the '188 patent and claims 1-14 and 16-19 of the '889 patent.  These claims may be referred to as the "asserted claims."  Defendant contends it does not infringe the asserted claims of the '188 and '889 patents.  Defendant further contends that the asserted claims are invalid for several reasons.

You will be asked to determine the issues of infringement and validity according to instructions I will give you in a moment.

## L.        Burdens of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence."

The second is called "clear and convincing" evidence.

Plaintiff must prove its claims of patent infringement by a preponderance of the evidence. When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true. To put it differently, if you were to put plaintiff's and defendant's evidence of infringement on opposite sides of a scale, the evidence supporting plaintiff's assertions would have to make the scale tip somewhat to plaintiff's side.

Clear and convincing evidence is a higher burden of proof than a preponderance of the evidence.

*[**Butamax**:  Defendant here contends that the asserted claims of the patents-in-suit are invalid.  However, patents are presumed to be valid.  Thus, defendant has the burden of proving that each one of the asserted claims of the '188 and '889 patents is invalid by clear and convincing evidence.]*[2]

*[**Gevo**:   Defendant has the burden of proving that each one of the asserted claims of the '188 and '889 patents is invalid by clear and convincing evidence.]*[3]

---

[2]     Butamax objects to Gevo's instruction and submits that the jury should be made aware of the presumption of validity, as it pertains to the clear and convincing standard.  *See Stryker Trauma S.A. v. Synthes (USA)*, 2006 WL 5349206, at *2 (D.N.J. Sept. 13, 2006) (including instruction regarding presumption of validity despite defendant's objection).

[3]     Gevo objects to Butamax's proposed instruction regarding the "presumption" as being argumentative and inviting the jury to apply an incorrect legal standard.  *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) ("[T]he presumption is one of law,

Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. You must decide, as to each of the asserted claims, whether defendant has proven, by clear and convincing evidence, that the claim is invalid by reason of anticipation and/or obviousness in light of the prior art and the ordinary skill of one in the art in [Butamax: October 2005; Gevo: October 2006].[4]  I will explain these concepts to you further in a moment.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether or not plaintiff has met its "more likely than not" burden of proof or defendant has met its "clear and convincing" burden of proof.

---

not fact, and does not constitute 'evidence' to be weighed against the challenger's evidence."); *Voda v. Cordis Corp.*, No. CIV-03-1512-L, 2006 WL 5347777, at *2-3 (W.D. Okla. May 10, 2006) (relying on *Chiron* in ruling that court would not instruct on presumption and that patentee's counsel should refrain from mentioning the presumption of validity); *see also Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1323 (Fed. Cir. 2004) ("[T]he grant of a patent does not create a presumption of validity beyond the requirement that the party seeking to invalidate a patent must prove invalidity by clear and convincing evidence."); *Smith & Nephew, Inc. v. Interface Med., Inc.*, Nos. 10-10951-RWZ, 11-12064-RWZ, 2012 WL 3560811, at *2 (D. Mass. Aug 17, 2012); *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2009 WL 3822694, at *2 n.1 (S.D. Cal. Nov. 13, 2009).

[4]  Butamax submits that the patents-in-suit have priority to U.S. Provisional Appl. No. 60/730,290, filed October 26, 2005.  Moreover, Dr. Stephanopoulos, Gevo's invalidity expert, conducted his analyses based on an October 26, 2005 priority date.  Therefore, to avoid any confusion, the jury should be instructed that October 2005, not October 2006, is the correct date.

## II.     THE PATENT CLAIMS

### A.     Patent Claims Generally

Before you can decide whether or not any of the asserted claims are infringed or invalid, you will have to understand what patent "claims" are. Patent claims are the numbered paragraphs at the end of a patent.

The patent claims involved here are claims 1-4, 13-15, 17-25 and 34-36 of the '188 patent, and claims 1-14 and 16-19 of the '889 patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

Claims are usually divided into parts, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim. A claim covering the invention of a table is called an apparatus or product claim. A claim describing the steps required to make a table is called a method or process claim.

*[**Butamax**:   Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement, plaintiff need only establish that one claim is infringed.][5]*

*[**Gevo**: Gevo proposes that this instruction should follow the Court's model instruction, which does not include Butamax's recited passage.][6]*

---

[5]   Butamax's proposed addition is entirely consistent with the law, and Butamax submits it should be included to avoid jury confusion.

[6]   Gevo objects to Butamax's proposed construction as redundant and misleading.

## B.     Dependent and Independent Claims

### 1.     Butamax's Proposed Instruction

There are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, Claim 1 of both the '188 and '889 patents are independent claims. You know this because this claim mentions no other claim. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 2 of the '188 patent is a dependent claim because it recites "a host cell according to claim 1." Accordingly, the words of Claims 1 and 2 must be read together in order to determine what the dependent claim, claim 2, covers. The same is true, for example, for claim 2 of the '889 patent, which recites "the method of claim 1."

Some claims of the patent in suit are broader than other claims. You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.[7]

---

[7]    Butamax objects to Gevo's construction as not being fully consistent with the law and not providing the jury with sufficient information to make a reasoned determination.

2.      **Gevo's Proposed Instruction**

There are two different types of claims in a patent.[8] The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, claim 1 of the '188 patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 2 of the '188 patent is a dependent claim. If you look at claim 2, it refers to claim 1. Therefore, to determine what claim 2 covers, you must consider both the words of claims 1 and 2 together.

---

[8]   Gevo's proposed instruction is adopted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 18. Gevo objects to Butamax's construction as being misleading and misstating the facts and law.

## C. Open-Ended or "Comprising" Claims

Several claims of the '188 and '889 patents use the transitional term "comprising." "Comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open-ended, that is, the claims are not limited to products that include only what is recited in the claim and nothing else.

If you find that the accused product or method includes all of the limitations in any of the asserted claims that use the term "comprising," the fact that it may also include additional elements or components is irrelevant. The presence of additional elements or components does not mean that the method or product does not infringe a patent claim.

*[**Butamax**: Butamax objects to the inclusion of Gevo's language.]*[9]

*[**Gevo**: Gevo proposes that the language of the Court's model instruction be used: "Similarly, if you find that the prior art includes all of the limitations in any of the asserted claims that use the word "comprising," the fact that it may also include additional elements is irrelevant. The presence of additional elements or components does not mean that the prior art does not invalidate a patent claim."]*

---

[9]  Butamax objects to Gevo's proposed addition as being misleading because the position of the word comprising is a relevant consideration. *See, e.g.*, *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1381 (Fed. Cir. 2001) ("It is clear that the process described by claim 1 of the [patent-in-suit] is part of a larger process that may encompass **preliminary or subsequent** steps."); *Dippin'Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007) ("comprising" cannot be used as a "weasel word" to abrogate claim limitations). The Court is also construing the claims and will instruct regarding the proper meaning of the term "comprising." Butamax further objects because if a prior art reference includes additional limitations that teach away from the claimed invention, that can mean that the prior art does not invalidate a claim.

### D.      Claim Construction

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use the meaning of each claim for your decision on validity.

You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

I instruct you that the following claim terms have the following definitions:

* * *

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.

III.     PATENT INFRINGEMENT

A.     Overview

1.     **Butamax's Proposed Instruction**

A patent owner has the exclusive right to make, use, or sell the invention covered by its patent claims during the life of the patent, or the patent owner has the right to license its patent to others. If any person makes, uses, sells (within the United States), offers to sell (from within the United States), or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

You must decide whether or not plaintiff has proven, by a preponderance of the evidence, that defendant has made or used a product or method covered by any of the claims at issue in this case. In this case, plaintiff alleges that defendant's accused products and method infringe the asserted claims either literally or under the doctrine of equivalents. Defendant would be liable for infringing plaintiff's patent if you find that plaintiff has proven by a preponderance of the evidence that defendant has made, used or sold the invention defined in at least one claim of plaintiff's patent. The fact that a defendant has not sold its infringing product commercially, or has only sold small quantities of the infringing product, is irrelevant. The defendant would still infringe, regardless of its commercial operations or plans.[10] If defendant makes any isobutanol with the patented technology, it infringes. Similarly, if you find that the defendant has made multiple products, some of which infringe and some of which do not, that is irrelevant. It only takes one product, molecule, organism or the like to infringe. Furthermore, the fact that defendant may have one or more patents relating to its accused products or method is irrelevant

---

[10]  *See Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343, 1352 (Fed. Cir. 2000) (Rader, J., concurring) ("Because the Patent Act confers the right to preclude 'use,' not 'substantial use,' no room remains in the law for a *de minimis* excuse"); 35 U.S.C. § 271.

to the question of whether defendant infringes the patents-in-suit.[11]   Finally, a defendant may

infringe a patent even if, in good faith, defendant believed that it did not infringe. Defendant's

knowledge or intent to infringe is not relevant.[12]

---

[11]   *See Lexion Med., LLC v. Northgate Technologies, Inc.*, 618 F. Supp. 2d 896, 901 (N.D. Ill. 2009) aff'd, 641 F.3d 1352 (Fed. Cir. 2011); *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1563 (Fed. Cir. 1986).

[12]   Butamax submits that its proposed instruction is entirely consistent with the law, unlike Gevo's instruction, and that in the absence of such instructions, a jury might be confused as to the proper test for infringement.

### 2.      Gevo's Proposed Instruction

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.[13] If any person makes, uses, sells (within the United States), offers to sell (from within the United States), or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In this case, plaintiff alleges that defendant's product or method directly infringes the asserted claims either literally or under the doctrine of equivalents.

You must decide whether or not plaintiff has proven, by a preponderance of the evidence, that defendant has made or used a product or method covered by any of the claims at issue in this case. A defendant may infringe a patent even if, in good faith, defendant believed that it did not infringe. Defendant's knowledge or intent to infringe is not relevant.

---

[13]    Gevo's proposed instruction is adapted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 21.  Gevo objects to the Butamax's proposed instruction as being argumentative, confusing, and misstating the facts and the law.

B.      **Direct Infringement by Literal Infringement**

1.      **Butamax's Proposed Instruction**

In order to prove direct infringement, plaintiff must prove that each limitation of the asserted claims is present in the accused product or method. A claim limitation may be present in an accused product or method in one of two ways: either literally or under the "doctrine of equivalents." I will explain the doctrine of equivalents to you momentarily.

A claim limitation is literally present if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as by its ordinary meaning to a person of ordinary skill in the art at the time of the invention.   Literal infringement must be determined with respect to each asserted claim individually by comparing the elements of the accused product or method to each of that claim's limitations.

Here, defendant does not dispute that it makes or uses a product, or practices a method, which meets each and every limitation of the asserted claims, with two exceptions:  With respect to the '188 patent, defendant's recombinant microbial host cells comprise a heterologous DNA molecule encoding a polypeptide that catalyzes a substrate to product conversion of acetolactate to 2,3-dihydroxyisovalerate.   The only dispute is whether that polypeptide is an acetohydroxy acid isomeroreductase (KARI) having the EC number 1.1.1.86.  All other claim limitations in the '188 asserted claims are met by the accused products and methods.  With respect to the '889 patent, Gevo practices a method for producing isobutanol which comprises contacting a fermentation media with a recombinant yeast microorganism expressing an engineered isobutanol biosynthetic pathway comprising the five claimed substrate to product conversions, including pathway step b (acetolactate to 2,3-dihydroxyisovalerate). But there is a dispute over whether when Gevo's microorganisms express a pathway wherein step b involves an

25

acetohydroxy acid isomeroreductase enzyme.   All other claim limitations in the '889 asserted claims are met by the accused products and methods infringe.

In determining whether defendant's accused products and methods meets these two disputed elements, you should determine the meaning of the element by reading the claim language, as the elements have been construed by the court, and you should compare the accused product or method to the elements of the asserted claims.   If you find that defendant practices these elements of these claims, you must return a verdict of literal infringement as to that claim.[14]

---

[14]   Butamax submits that in this case, Gevo has not disputed infringement of any elements of all asserted claims of the patents-in-suit, with the exception of the "acetohydroxy acid isomeroreductase" elements.   Butamax has asked that the Court enter findings of fact pursuant to Fed. R. Civ. P. 56 in this regard.   (*See* Pre-Trial Order at Exh. 12).   Butamax's proposed construction accounts for the fact that there is no dispute about the vast majority of claim elements and that Gevo has offered no rebuttal on such elements.   To instruct the jury as Gevo proposes would create unnecessary confusion and work for the jury, and possibly result in a verdict that is inconsistent with the undisputed evidence.

## 2.    Gevo's Proposed  Instruction

In order to prove direct infringement, plaintiff must prove that each limitation of the asserted claims is present in the accused product or method.[15] A claim limitation may be present in an accused product or method in one of two ways: either literally or under the "doctrine of equivalents." I will explain the doctrine of equivalents to you momentarily.

A claim limitation is literally present if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand its ordinary meaning.

Literal infringement must be determined with respect to each asserted claim individually by comparing the elements of the accused product or method to each of that claim's limitations. If the accused product or method omits any single limitation recited in a given claim, then you must find that defendant has not infringed that claim.

You must determine infringement with respect to each asserted claim and each accused product or method individually.

In determining whether any accused product or method literally infringes any asserted claim, you should take the following steps:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning; and Second, you should compare the accused product or method, element by element, to each of the limitations of

---

[15] Gevo's proposed instruction is adapted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 22-23. Gevo objects to Butamax's proposed construction as argumentative, confusing, and misstating the facts and law.

the asserted claim. If you find each and every limitation of the asserted claim in the accused product or method, you must return a verdict of literal infringement as to that claim.

If you did not find each and every limitation of the asserted claim in the accused product or method, you may not return a verdict of literal infringement as to that claim. You must repeat the above analysis with every asserted claim. There is one exception to this rule. If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or method meets the additional requirements of any claims that depend from the independent claim, thus, whether those dependent claims have also been infringed.

Remember the question is whether the accused product or method infringes any of the asserted claims, and not whether the accused product or method is similar or even identical to a product or method of plaintiff. Accordingly, you must be certain to compare the accused product or method only with the claims it is alleged to infringe and not with any product or method of plaintiff.

C.      **Infringement Under the Doctrine of Equivalents**

1.      **Butamax's Proposed Instruction**

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term. You may find that defendant's product or method infringes an asserted claim, even if not all of the component parts or method steps of the claim are literally present in defendant's product or method. You may find infringement in such circumstances if the component parts or method steps of defendant's product or method are equivalent to the absent element claimed in at least one of plaintiff's patent claims. This is called the doctrine of equivalents.

To determine whether there is infringement under the doctrine of equivalents, you should ask yourselves whether the differences between the claimed feature and the feature in the accused product or method are insubstantial.   To make this determination, you can ask yourselves whether the claim element literally missing from the accused product or method performs substantially the same function in substantially the same way to produce substantially the same result as the element of the claims. If the answer to this question is yes, you should find infringement under the doctrine of equivalents.[16]

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued.   The question of whether defendant's product or method and its component parts or

---

[16]   "A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device.   One way that a patentee may prove that a particular claim element is met under the doctrine of equivalents is by showing that the accused product performs substantially the same function in substantially the same way with substantially the same result as claimed in the patent."   *Energy Transp. Group, Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1352 (Fed. Cir. 2012) (citations and quotations omitted); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011)

method steps are equivalent to that defined in plaintiff's claims is to be determined as of the time of the alleged infringement.[17]   If you find the enzyme in defendant's accused products is an equivalent of an acetohydroxy acid isomeroreductase or an acetohydroxy acid isomeroreductase having E.C. number 1.1.1.86, you should find infringement of the '889 and '188 patents, respectively.[18]

---

[17]   Butamax's proposed instruction is consistent with the law.  *See Atlas Powder Co. v. E. I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1581 (Fed. Cir. 1984).

[18]   Butamax objects as Gevo's instruction is inconsistent with the law.  *See Lexion Med., LLC v. Northgate Technologies, Inc.*, 618 F. Supp. 2d 896, 901 (N.D. Ill. 2009) aff'd, 641 F.3d 1352 (Fed. Cir. 2011); *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1563 (Fed. Cir. 1986).   "[I]t is well established that separate patentability does not avoid equivalency as a matter of law." *Fiskars, Inc. v. Hunt Mfg. Co.,* 221 F.3d 1318, 1324 (Fed. Cir. 2000) (affirming district court's decision to exclude evidence of separate patentability).

## 2.    Gevo's Proposed Instruction

Under the doctrine of equivalents, a product or method can infringe an asserted claim if it includes parts that are identical or equivalent to the limitations of the claim.[19] Under the patent law, an infringing equivalent is not treated any differently than a product or method that literally infringes the claim limitations of the patent.

You may find that a claim limitation is present in an accused product or method under the doctrine of equivalents if a person having ordinary skill in the art would have considered the differences between that claim limitation and a comparable element in the accused product or method to be "insubstantial" or would have found that the structure or step: (1) performs substantially the same function; and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the structure or step to be considered interchangeable, the structure or step must have been known at the time of the alleged infringement to a person having ordinary skill in the art. Interchangeability at the present time is not sufficient. In addition, when the PTO grants a patent that covers an accused product with knowledge of the asserted patents, you may consider that as evidence that the product is not equivalent to the invention disclosed by the asserted patents.[20] In order to prove infringement by "equivalents," plaintiff must prove the equivalency of the structure or steps to a claim limitation by a preponderance of the evidence.

---

[19]   Gevo's proposed instruction is adapted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 24.   Gevo objects to Butamax's proposed instruction as misstating the law and facts and being confusing, argumentative, and misleading.

[20]   *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996) ("The nonobviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial."); *Gen. Atomics Diazyme Labs. Div. v. Axis-Shield ASA*, 440 F. Supp. 2d 1083 (N.D. Cal. 2006), *aff'd*, No. 2007-1349, 2008 WL 2019490 (Fed. Cir. May 12, 2008).

**D.      Infringement Despite Defendant's Improvements or Patents on Improvements**

**1.      Butamax's Proposed Instruction**

You may find that defendant's accused product or method represents an improvement over the invention defined in plaintiff's patent claims. However, you are not to presume that these facts mean that defendant does not infringe plaintiff's patent claims. As long as defendant's accused product or method includes all of the elements, literally or by equivalents, of at least one of plaintiff's patent claims, then plaintiff's patent claims are infringed by defendant's product or method despite defendant's improvements and patent.[21]

---

[21]      *See* Atlas Powder Co. v. E. I. DuPont de Nemours & Co., 750 F.2d 1569, 1580-1581 (Fed. Cir. 1984).

### 2.      Gevo's Proposed Instruction

Gevo objects to the inclusion of Butamax's proposed instruction as argumentative, misleading, redundant of the instruction titled "Open-Ended or 'Comprising' Claims," and misstating the law.

**IV.**     I{.small}NVALIDITY

**A.     Introduction**

As I stated previously, defendant contends that the asserted claims are invalid. I will now explain to you each of the grounds for invalidity that were presented by defendant at trial. A party must meet its burden of proof on only one ground in order to show that a claim is invalid. In making your determination as to invalidity, you should consider each claim separately.

B.      **Affirmative Defense of Invalidity Generally**

1.      **Butamax's Proposed Instruction**

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you as we discuss defendant's grounds for asserting invalidity.

Defendant has challenged the validity of the asserted claims on a number of grounds. Although the patent was granted by the Patent and Trademark Office, and therefore there is a presumption that the PTO correctly did its job and that the patent is valid,[22] it is your job to determine whether defendant has proven, by clear and convincing evidence, that the legal requirements for patentability were not met.

I will now explain to you defendant's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

_____

[22]  35 U.S.C. § 282.

## 2.   Gevo's Proposed Instruction

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious.[23] The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you as we discuss defendant's grounds for asserting invalidity.

Defendant has challenged the validity of the asserted claims on a number of grounds. Although the patent was granted by the Patent and Trademark Office, it is your job to determine whether defendant has proven, by clear and convincing evidence, that the legal requirements for patentability were not met.

I will now explain to you defendant's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

---

[23]   Gevo's proposed instruction is adopted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 29.   Gevo objects to Butamax's proposed instruction regarding the "presumption" as being argumentative and inviting the jury to apply an incorrect legal standard.   *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) ("[T]he presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against the challenger's evidence."); *Voda v. Cordis Corp.*, No. CIV-03-1512-L, 2006 WL 5347777, at *2-3 (W.D. Okla. May 10, 2006) (relying on *Chiron* in ruling that court would not instruct on presumption and that patentee's counsel should refrain from mentioning the presumption of validity); *see also Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1323 (Fed. Cir. 2004) ("[T]he grant of a patent does not create a presumption of validity beyond the requirement that the party seeking to invalidate a patent must prove invalidity by clear and convincing evidence."); *Smith & Nephew, Inc. v. Interface Med., Inc.*, Nos. 10-10951-RWZ, 11-12064-RWZ, 2012 WL 3560811, at *2 (D. Mass. Aug 17, 2012); *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2009 WL 3822694, at *2 n.1 (S.D. Cal. Nov. 13, 2009).

C.      Prior Art

1.      Butamax's Proposed Instruction

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before in the field.

That which came before is referred to as the "prior art." Defendant must prove, by clear and convincing evidence, that whatever it relies on is prior art.  In order to do so, Defendant must prove that the material was described in a printed publication before the inventor made the invention, or more than one year before the application for the patent was filed.[24]  For these purposes, you are to assume that the date of invention is no later than the October 26, 2005 filing date.  Furthermore, the art must be analogous art, which I will explain further in a few minutes.[25]

---

[24]  35 U.S.C. § 102.

[25]  Butamax objects to Gevo's instruction as being unnecessarily complex and touching on issues that are irrelevant to the disputes in this case.  The disputes regarding the definition of prior art are whether the alleged prior art is analogous art, or whether the prior art alleged by Gevo was adequately disclosed in fact and expert discovery.  The substance of what this art teaches is addressed by other instructions.  Furthermore, for the reasons stated above, Butamax objects to Gevo's use of an October 2006 critical date.

### 2.    Gevo's Proposed Instruction

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before.[26]

That which came before is referred to as the "prior art." Defendant must prove, by clear and convincing evidence, that these items are prior art. In order to do so, defendant must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Second, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed. In this case, that means anything that was in public use or on sale in the United States before October 26, 2005.

Third, anything that was patented and/or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.[27]

Fourth, anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

Fifth, anything that was described in a patent application that was filed before the inventor made the invention and issued as a patent or published as a patent publication.[28]

---

[26]   Gevo's proposed instruction is adapted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 30-31.

[27]   35 U.S.C. § 102.

[28]   35 U.S.C. § 102.

Specifically, you must determine whether the '188 and '889 patents are invalid in view of the prior art and the ordinary skill in the art in October 2006.

D.      **Anticipation**

1.      **Butamax's Proposed Instruction**

In order for someone to be granted a patent, the invention must actually be "new." In general, inventions are new when they are not in the prior art. In this case, defendant contends that claims 1, 3-5, and 9-11, 13-19 of the '889 patent are not new as anticipated by one or more of the following references:

- Claims 1, 3 and 16 of the '889 patent:

    o  Larroy II, Yocum, Elischweski

- Claims 4 and 5 of the '889 patent:

    o  Yocum

- Claims 9, 11, 14 and 15 of the '889 patent:

    o  Elischweski, Yocum

- Claim 10 of the '889 patent:

    o  Elischweski

- Claim 13 of the '889 patent:

    o  Hohmann, Eberhardt, Moller, Vuralhan

- Claims 17-19 of the '889 patent:

    o  Larroy II[29]

Defendant does not contend that any of the claims of the '188 patent are anticipated. Invalidity by anticipation requires the presence in a single prior art disclosure of all requirements, or limitations, of a claimed invention arranged as in the claim. For a claim to be

---

[29]   Butamax submits that the prior art alleged by Dr. Stephanopoulos should be explained to the jury in the instructions, so that there is no confusion about the questions they should be answering. This is also set forth in Butamax's proposed verdict sheet.

anticipated, each claim limitation must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those limitations must also be disclosed, either expressly or inherently, in that same prior art reference. The requirement that the prior art limitations themselves be "arranged as in the claim" means that claims cannot be treated as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning.

You should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation. Inherency may not be established by showing that the unstated limitation was merely probably or possibly present. Inherency applies where the claimed invention is necessarily present in a single prior art disclosure.[30]   If defendant has not demonstrated that every element of the claim is necessarily present, then the prior art does not anticipate.   The fact that these elements may be present is not sufficient to prove anticipation.

---

[30]   Butamax's instruction is consistent with the law.   "To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence. Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Cont'l Can Co.*, 948 F.2d at 1268; *Allergan, Inc. v. Barr Labs., Inc.*, 808 F. Supp. 2d 715, 730 (D. Del. 2011).   "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *Cont'l Can Co.*, 948 F.2d at 1269 (citing *In re Oerlich*, 666 F.2d 578, 581 (C.C.P.A. 1981); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *see also Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1383 (Fed. Cir. 2011) ("[I]nherent anticipation requires more than mere probabilistic inherency, and more than the presence of an unrecognized *de minimis* quantity of claimed substance in the prior art") (citation omitted); *Glaxo Inc. v. Novopharm Ltd.*, 830 F. Supp. 871, 874 (E.D.N.C. 1993), *aff'd* 52 F.3d 1043 (Fed. Cir. 1995).   Gevo's proposed instruction that a prior art reference merely has to anticipate under "normal conditions" is an improper statement of law, and as set forth in Butamax's *Daubert* motion, Gevo's experts offer no evidence of what such "normal conditions" are.   Thus, providing such an instruction will only serve to confuse the jury.

The description provided in the prior art must be such that a person of ordinary skill in the art in the field of invention could, based on the reference, practice the claimed invention without undue experimentation.

To prevail on its defense of invalidity by anticipatory prior art, defendant must prove, by clear and convincing evidence, that the asserted claims of the patents in suit are anticipated by the prior art identified in these instructions.[31]

---

[31]   Butamax objects to this instruction because it is an improper statement of law, and as set forth in Butamax's Daubert motion, Gevo's experts offer no evidence of what such "normal conditions" are.  Thus, providing such an instruction will only serve to confuse the jury.

## 2.   Gevo's Proposed Instruction

In order for someone to be granted a patent, the invention must actually be "new."[32] In general, inventions are new when they have not been made, used, or disclosed before. In this case, defendant contends that claims 1, 3-5, and 9-19 of the '889 patent are not new as anticipated.

Invalidity by anticipation requires the presence in a single prior art disclosure of all requirements, or limitations, of a claimed invention arranged as in the claim. For a claim to be anticipated, each claim limitation must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those limitations must also be disclosed, either expressly or inherently, in that same prior art reference. The requirement that the prior art limitations themselves be "arranged as in the claim" means that claims cannot be treated as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning.

You should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Anticipation by inherent disclosure is appropriate when the prior art reference inherently contains a limitation that may not be expressly described.   An element is inherently in the prior art if the prior art must necessarily include the unstated limitation. Inherency may not be established by showing that the unstated limitation was merely probably or possibly present.[33]   Instead, the unstated limitation is inherent and in the public

---

[32]   Gevo's proposed instruction is adapted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 32-33.  Gevo objects to Butamax's proposed instruction as misstating the facts and the law.

[33]   *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) ("A claim limitation is inherent in the prior art if it is necessarily present in the prior art, not merely probably or possibly present.").

domain if it is the natural result flowing from the express disclosure of the prior art.[34] Inherency applies where the claimed invention is a necessary consequence of using the prior art disclosure under normal conditions or the conditions described in the prior art disclosure, even if the element is not formed accidentally or under unusual conditions.[35] Inherent anticipation does not require anyone to have recognized the inherent disclosure of the claimed invention or to have intended to produce the claimed invention.[36] Inherent anticipation does not require anyone to understand the scientific principles underlying the claimed invention.[37] Evidence outside the

---

[34] *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1378 (Fed. Cir. 2003) ("The extent of the inherent disclosure does not limit its anticipatory effect. In general, a limitation or the entire invention is inherent and in the public domain if it is the natural result flowing from the explicit disclosure in the prior art.") (internal quotation omitted); *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1343, 1343 (Fed. Cir. 2005) (anticipation occurs when "the disclosure [of the prior art] is sufficient to show that the natural result flowing from the operation as taught [in the prior art] would result in the claimed product"); *King Pharms., Inc. v. Eon Labs., Inc.*, 616 F.3d 1267, 1275-76 (Fed. Cir. 2010) (same).

[35] *Schering*, 339 F.3d at 1378 ("In the context of accidental anticipation, DCL is not formed accidentally or under unusual conditions when loratadine is ingested. The record shows that DCL necessarily and inevitably forms from loratadine under normal conditions. DCL is a necessary consequence of administering loratadine to patients.").

[36] *Schering*, 339 F.3d at 1378 ("[I]nherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure."); *SmithKline*, 403 F.3d at 1343 ("[I]nherent anticipation does not require a person of ordinary skill in the art to recognize the inherent disclosure in the prior art at the time the prior art is created."); *Abbott Labs. V. Baxter Pharm. Prods., Inc.*, 471 F.3d 1363, 1367 (Fed. Cir. 2006) ("Our cases have consistently held that a reference may anticipate even when the relevant properties of the thing disclosed were not appreciated at the time.... A prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference. Inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure."); *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1349 (Fed. Cir. 1999) ("[A]n insufficient scientific understanding does not defeat a showing of inherency.").

[37] See each of the references cited above in the immediately preceding footnote. See also *SmithKline*, 403 F.3d at 1346 ("[O]ne of the principles underlying the doctrine of inherent anticipation is to ensure that the public remains free to make, use or sell prior art compositions or processes, regardless of whether or not they understand their complete

prior art disclosure may be used to show that the prior art disclosure itself inherently anticipated the claimed invention, including experiments performed after the patent's filing date, later publications, or later expert testimony.[38]

The description provided in the prior art must be such that a person of ordinary skill in the art in the field of invention could, based on the reference, practice the invention without undue experimentation.

To prevail on its defense of invalidity by anticipatory prior art, defendant must prove, by clear and convincing evidence, that the asserted claims of the patents in suit are anticipated by the prior art.

If you find that any of the references cited by defendant for anticipation were not previously presented to or considered by the Patent Office, you may consider that fact in determining whether the defendant's invalidity defense has been proven by clear and convincing evidence.[39]

---

makeup or the underlying scientific principles which allow them to operate. Invalidating claim 1 of the '723 patent for inherent anticipation by the '196 patent furthers this policy ....") (internal quotation, citation, and brackets omitted).

[38] *Schering*, 339 F.3d at 1381-82 (clinical studies performed in 1987 demonstrated inherency of disclosure from 1981); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001) ("[R]ecourse to extrinsic evidence is proper to determine whether a feature, while not explicitly discussed, is necessarily present in a reference.").

[39] *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011) ("Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force. And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain. In this respect, although we have no occasion to endorse any particular formulation, we note that a jury instruction on the effect of new evidence can, and when requested, most often should be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent. When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it

E.      **Obviousness**

1.      **Butamax's Proposed Instruction**

Defendant contends that the asserted claims are invalid as being obvious.[40]   You must judge the obviousness of each claim separately.   The fact that one claim is obvious does not mean other claims are obvious.

Defendant contends that each of the asserted claims from the '188 and '889 patents is obvious as follows:

- Claims 1, 2-4, 13, 17-20, 24-25, 34-35 of the '188 patent:

    o   Chen, Oshita, Yoshimoto, Boulton and Hansen, when combined with Yocum and Smit

- Claim 14 of the '188 patent:

    o   Chen, Oshita, Yoshimoto, Boulton and Hansen, when combined with Yocum, Smit and Renna

- Claim 15 of the '188 patent:

    o   Chen, Oshita, Yoshimoto, Boulton and Hansen, when combined with Yocum, Smit and Petersen

- Claim 21-22 of the '188 patent:

    o   Chen, Oshita, Yoshimoto, Boulton and Hansen, when combined with Yocum, Smit and Laffend

- Claim 23 of the '188 patent:

    o   Chen, Oshita, Yoshimoto, Boulton and Hansen, when combined with Yocum, Smit and Nakamura

- Claim 36 of the '188 patent:

---

is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence.").

[40]   Butamax objects to Gevo's instruction as confusing and irrelevant to the issues here.

- Chen, Oshita, Yoshimoto, Boulton and Hansen, when combined with Yocum, Smit and Larroy I

- Claim 1 of the '889 patent:

  - Boulton or Hansen, alone.

- Claim 2 of the '889 patent:

  - Larroy II, Elischweski, Yocum, Boulton, and Hansen, when combined with Laffend.

- Claim 3 of the '889 patent:

  - Boulton or Hansen, when combined with Larroy II, Elischweski, or Yocum.

- Claims 4 and 5 of the '889 patent:

  - Boulton or Hansen, when combined with Yocum

- Claims 6-7 of the '889 patent:

  - Larroy II, Elischweski, Yocum, Boulton, and Hansen, when combined with Card and Cockrem.

- Claim 8 of the '889 patent:

  - Larroy II, Elischweski, Yocum.

- Claims 9, 11 and 14 of the '889 patent:

  - Boulton or Hansen, when combined with Yocum or Elischweski

- Claim 10 of the '889 patent:

  - Boulton or Hansen, when combined with Elischweski

- Claim 12:

  - Larroy II, Elischweski, Yocum, Boulton, and Hansen, when combined with Cheng.

- Claim 13:

  - Chen, Oshita, Yoshimoto, Boulton and Hansen, when combined with Yocum, Smit and van Maris.

- Claim 16:

      o  Boulton or Hansen, when combined with Elischweski, Yocum or Larroy II.

    •  Claims 17-19:

      o  Boulton or Hansen, when combined with Larroy II.[41]

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should first determine the scope and content of the prior art. This means that you should determine what prior art was reasonably pertinent to the particular problems the inventor faced.

Prior art must be "analogous art" to be relevant to your consideration of obviousness. Analogous art may be art from the same field of endeavor. If the reference is not within the field of the inventors' endeavor, it may still be considered if the reference is reasonably pertinent to the particular problem that the inventors faced.  If you determine that a particular reference is not analogous art, you should not consider it in deciding whether the claims are obvious.  If you determine that a reference is analogous art, then the next inquiry is whether the reference is in fact prior art.[42]  Prior art includes only analogous art that was described in a printed publication

---

[41] Butamax submits that the prior art alleged by Dr. Stephanopoulos should be explained to the jury in the instructions, so that there is no confusion about the questions they should be answering.  This is also set forth in Butamax's proposed verdict sheet.

[42] *In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011) ("a prior art reference only qualifies for an obviousness determination under § 103 when it is analogous to the claimed invention.").

anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

You must next consider the differences, if any, between the prior art and each asserted claim. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art. Each claim must be considered in its entirety.[43]

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertained at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include:

(1) The educational level of the inventor and of others working in the field;

(2) The types of problems encountered in the art at the time of the invention;

(3) The prior art patents and publications;

(4) The activities of others;

(5) Prior art solutions to the problems encountered by the inventor; and

(6) The sophistication of the technology.

If you find that the available prior art shows each of the limitations of the asserted claims, you must determine whether it then would have been obvious to a person of ordinary skill in the art to combine or coordinate these limitations in the same manner as the asserted claims. This is often referred to as "motivation to combine." Defendant must show that a person of ordinary skill in the art would have had motivation to combine the prior art references in the same manner as the asserted claims and would have had a reasonable expectation of success in doing so. The

---

[43]  *See W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1551 (Fed.Cir.1983)

difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Monday morning quarterbacking is quite improper when resolving the question of nonobviousness in a court of law.[44]

You may not consider the manner in which the invention was made to find invalidity.[45] A patent composed of several limitations is not proved obvious merely by demonstrating that each of its limitations was independently known in the prior art. Inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. This does not mean such combinations are obvious. The evidence must show, clearly and convincingly, that a skilled artisan, confronted with the same problem as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art for combination in the manner claimed.[46]

Additionally, to find a claim obvious, you must find there was clear and convincing evidence of a motivation to combine the prior art in the way defendant claims, and that a person of ordinary skill in the art would have had a reasonable expectation of success in combining the

---

[44] *Orthopedic Equip. Co. v. U.S.*, 702 F.2d 1005, 1012 (Fed. Cir. 1983).

[45] 35 U.S.C. § 103(a).

[46] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007); *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998)

prior art to produce isobutanol in recombinant hosts through the precise pathway enzymes in the '188 and '889 patents.[47]

---

[47] *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009); *see also Amgen Inc. v. F. Hoffman-La Roche, Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009); *Bayer AG v. Dr. Reddy's Labs., Ltd.*, 518 F. Supp. 2d 617, 624-25 (D. Del. 2007); *Ortho-McNeil Pharm., Inc., v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008)

### 2.    Gevo's Proposed Instruction

Defendant contends that the asserted claims are invalid as being obvious.[48]

Defendant contends that each of the asserted claims is obvious in view of one or more references, either alone or in combination with other references.

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. This is because granting patent protection to advances that would occur in the ordinary course, without real innovation, retards progress and may deprive prior inventions of their value or utility. What matters is the objective reach of the claim. If the claim covers any obvious embodiment, it is invalid. It does not matter if the claim also covers a non-obvious embodiment.[49]

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should first determine the scope and content of the prior art.  Prior art must be "analogous art" to be relevant to your consideration of obviousness. Analogous art may be art from the same field of endeavor.

---

[48]   Gevo's proposed instruction is adapted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 34-37.  Gevo objects to Butamax's instruction as misstating the facts and the law.

[49]   *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 419 (2007) ("In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103."); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 n.4 (Fed. Cir. 2008) (noting that "long-established rule that claims which are broad enough to read on obvious subject matter are unpatentable even though they also read on nonobvious subject matter") (internal quotation omitted).

If the reference is not within the field of the inventors' endeavor, it may still be considered if the reference is reasonably pertinent to any known problem for which there was a solution encompassed by the patent's claims.[50]

You must next consider the differences, if any, between the prior art and each asserted claim. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertained at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include:

(1) The educational level of the inventor and of others working in the field;

(2) The types of problems encountered in the art at the time of the invention;

(3) The prior art patents and publications;

(4) The activities of others;

(5) Prior art solutions to the problems encountered by the inventor; and

(6) The sophistication of the technology.

A person of ordinary skill in the art is presumed to have knowledge of all relevant prior art at the time of the claimed invention.[51] If you find that the available prior art shows each of the

---

[50]   *KSR*, 550 U.S. at 419-20 ("One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of the invention a known problem for which there was an obvious solution encompassed by the patent's claims. The first error of the Court of Appeals in this case was to foreclose this reasoning by holding that courts and patent examiners should look only to the problem the patentee was trying to solve.").

[51]   *In re Nilssen*, 851 F.2d 1401, 1403 (Fed. Cir. 1988) (The hypothetical "person of ordinary skill in the art" is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field.").

limitations of the asserted claims, you must determine whether it then would have been obvious to a person of ordinary skill in the art to combine or coordinate these limitations in the same manner as the asserted claims.[52] A patent composed of several limitations is not proved obvious merely by demonstrating that each of its limitations was independently known in the prior art.

You must determine whether a person of ordinary skill in the art has simply implemented a predictable variation of prior art elements or, conversely, whether he or she has made an improvement that is more than the predictable use of prior art elements according to their established functions.

When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product, not of innovation, but of ordinary skill and common sense. In that instance, the fact that a combination was obvious to try might show that it was obvious. Any need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed.

A person of ordinary skill in the art is also a person of ordinary creativity. In many cases, a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle. However, where the art is unpredictable, a focus on known elements may still present a difficult hurdle for one of skill in the art because the results of potential solutions may be unknown or unexpected.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should not apply any rigid test or formula.

---

[52] *KSR*, 550 U.S. at 419 ("The obviousness analysis cannot be confined by a formalistic conception of the words  teaching, suggestion, and motivation ....").

Rather, you should use your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known limitations to achieve predictable results.

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art. Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

To prevail on its defense of invalidity by obviousness to a person of ordinary skill in the art at the time the inventions of the patents in suit were made, defendant must prove, by clear and convincing evidence, that the asserted claims of the patents in suit were obvious in view of the prior art.

If you find that any of the references cited by defendant for obviousness were not previously presented to or considered by the Patent Office, you may consider that fact in determining whether the defendant's invalidity defense has been proven by clear and convincing evidence.[53]

---

[53]  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011) ("Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force. And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain. In this respect, although we have no occasion to endorse any particular formulation, we note that a jury instruction on the effect of new evidence can, and when requested, most often should be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent. When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that

### F.  Obviousness – Objective Criteria Concerning Non-Obviousness (Secondary Considerations)

#### 1.  Butamax's Proposed Instruction

In making your decision only as to the obviousness or non-obviousness of the asserted claims, you must consider the objective evidence which may tend to show non-obviousness of the claims at issue, including the following:

(1)  Commercial success or lack of commercial success of products covered by the asserted claims;

(2)  A long-felt need in the art that was satisfied by the invention of the asserted claims;

(3)  The failure of others to make the invention;

(4)  Copying of the invention by others in the field;

(5)  Unexpected results achieved by the invention;

(6)  Praise of the invention by defendant or others in the field;

(7)  The taking of licenses under the patent by others;

(8)  Expressions of surprise or disbelief regarding the invention by those having ordinary skill in the art; and

(9)  Whether the inventor proceeded contrary to the accepted wisdom in the field.

In your determination of obviousness, then, you must consider whether plaintiff has demonstrated that such secondary considerations exist and that there is a sufficient nexus between the considerations and the claimed invention.

---

question.  In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence.").

56

It is inappropriate to completely disregard evidence relating to the issue of obviousness.[54]
Although some parts of the evidence may weigh more heavily than others, your decision of
obviousness or non-obviousness should take into account all of the evidence that has been
introduced.    Should plaintiff demonstrate that there are secondary considerations of
nonobviousness, these must be considered. Ultimately, as I stated earlier, it is at all times
defendant's burden to demonstrate obviousness by clear and convincing evidence.[55]

---

[54] *Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009) (secondary considerations "may often be the most probative and cogent evidence of non-obviousness.in the record."); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) (secondary considerations are "to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art."); *Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004) (failure to consider secondary considerations constitutes reversible error).

[55] Butamax objects to Gevo's instructions to the extent they are unsupported by any case law. Butamax further objects to these instructions as touching on issues that are irrelevant to this case and for which Gevo has proffered no evidence.

## 2.    Gevo's Proposed Instruction

In making your decision only as to the obviousness or non-obviousness of the asserted claims, you should consider the objective evidence which may tend to show non-obviousness of the claims at issue, including the following:[56]

(1) Commercial success or lack of commercial success of products covered by the asserted claims;

(2) A long-felt need in the art that was satisfied by the invention of the asserted claims;

(3) The failure of others to make the invention;

(4) Copying of the invention as compared to independent development by others in the field;

(5) Unexpected results achieved by the invention;

(6) Praise of the invention by defendant or others in the field;

(7) The taking of licenses under the patent by others;

(8) Expressions of surprise or disbelief regarding the invention by those having ordinary skill in the art; and

(9) Whether the inventor proceeded contrary to the accepted wisdom in the field.

In your determination of obviousness, then, you must consider whether plaintiff has demonstrated not only that such secondary considerations exist, but also whether plaintiff has proven that there is a sufficient nexus between the considerations and the claimed invention. In other words, plaintiff must show that the claimed inventions of the '188 and '889 patents contributed to these secondary considerations, rather than the considerations being due to other

---

[56] Gevo's proposed instruction is adapted from the Court's "Model Final Jury Instructions [Infringement and Validity]" at 38-39. Gevo objects to Butamax's proposed instruction as misstating the law.

features of something else, such as other features of plaintiff's product or method, the general status of plaintiff as a manufacturer, or any other actions taken by plaintiff in producing and marketing product or method.

For example, if commercial success is due to other factors, such as later research and development in the field by the patent owner or others, market position, advertising, promotion, salesmanship of the like, then any commercial success may have no relation to the issue of obviousness.[57]   Likewise, if commercial success is due to features of the products that were in the prior art or are not required by the asserted claims, then any commercial success may have no relation to the issue of obviousness.[58]

In this case, plaintiff has the burden of proving any secondary consideration issues by a preponderance of the evidence. Should plaintiff not meet this burden, you must make your obviousness determination based only on the scope and content of the prior art, any differences between the claimed invention and the prior art, and the level of ordinary skill in the art. Should plaintiff demonstrate that there are secondary considerations of nonobviousness, these may also

---

[57]   *In re DBC*, 545 F.3d 1373, 1384 (Fed. Cir. 2008) ("We have held on a number of occasions that evidence of commercial success alone is not sufficient to demonstrate nonobviousness of a claimed invention. Rather, the proponent must offer proof that the sales were a direct result of the unique characteristics of the claimed invention–as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter.") (emphasis added); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.... Thus, if the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant. So too if the feature that creates the commercial success was known in the prior art, the success is not pertinent."); *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1336 (Fed. Cir. 2010) ("Because the claims are broad enough to cover devices that either do or do not solve the 'short fill' problem, Abbott's objective evidence of non-obviousness fails because it is not commensurate in scope with the claims which the evidence is offered to support.") (internal quotation omitted); *In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983) (same).

[58]   See each of the references cited above in the immediately preceding footnote.

be considered. Ultimately, as I stated earlier, it is at all times defendant's burden to demonstrate obviousness by clear and convincing evidence.

G.    **Lack of Written Description**

1.    **Butamax's Proposed Instruction**

A patent claim is valid if the patent contains an adequate written description of the claimed invention. To prove invalidity, the defendant must show by clear and convincing evidence that the written description of the patent does not convey to a person of skill in the art that the inventors had possession of the claimed subject matter as of the patent application filing date. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. The written description requirement is satisfied by the patentee's disclosure of such descriptive means as words, structures, figures, diagrams, formulas, etc. that fully set forth the claimed invention.  Working examples are not necessary to satisfy the written description requirement.[59]   A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.   A negative limitation is described if the specification provides a motivation to exclude the element from the invention.[60]

---

[59]   *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir. 2002); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

[60]   *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1351 (Fed. Cir. 2012).

## 2.    Gevo's Proposed Instruction

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.[61] To prove invalidity for lack of written description, the defendant must show by clear and convincing evidence that the written description of the patent does not convey to a person of skill in the art that the inventors had possession of the claimed subject matter as of the patent application filing date.[62] Possession means that the inventors had actually invented the invention that they claimed; a mere wish, plan, or mention of a desired outcome is not enough.[63] The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.  A patent

---

[61]    Gevo's proposed instruction is adapted from the Northern District of California Model Patent Jury Instruction No. 4.2a (Nov. 2011).  Gevo objects to Butamax's proposed instruction as misstating the law.

[62]    *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) ("[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.").

[63]    *Ariad*, 598 F.3d at 1351 (possession requires a "show[ing] that the inventor actually invented the invention claimed"); *id.* at 1356-57 (concluding that the patent description is insufficient because it "just represents a wish, or arguably a plan for future research") (internal quotation omitted); id. at 1357 (rejecting disclosure because it was a "mere mention of a desired outcome").

specification that merely renders the claimed invention obvious does not satisfy the written description requirement.[64]

---

[64]   *Ariad*, 598 F.3d at 1352 ("[A] description that merely renders the invention obvious does not satisfy the requirement.").

H.       **Non-Enablement**

1.       **Butamax's Proposed Instruction**

A patent claim is valid if it enables a person skilled in the art to make and use the invention without undue experimentation.   To succeed in showing non-enablement, the defendant must show by clear and convincing evidence that the patent did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the claimed invention, without undue experimentation. The test for enablement is whether a person of skill in the art, reading the patent specification, could or could not make, use or practice the claim without undue experimentation. If they could do so, the claim is not invalid.[65]

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation. In determining whether excessive experimentation is required, you may consider the following factors:

the scope of the claimed invention;

the amount of guidance presented in the patent;

the amount of experimentation necessary;

the time and cost of any necessary experimentation;

how routine any necessary experimentation is in the field of [identify field];

whether the patent discloses specific working examples of the claimed invention;

the nature and predictability of the field; and

the level of ordinary skill in the field of [identity field].

---

[65] *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988); *Martek Biosciences Corp. v. Nutrinova, Inc.,* 579 F.3d 1363, 1378 (Fed. Cir. 2009)

A specification need not contain a working example if the invention is otherwise disclosed in such a matter that one skilled in the art to which the invention pertains will be able to practice it without an undue amount of experimentation.[66]

---

[66] *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1334 (Fed. Cir. 2003); *see also Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) ("[A] patent need not teach, and preferably omits, what is well known in the art.")

## 2.    Gevo's Proposed Instruction

A patent claim is invalid if it is not enabled.[67]  To succeed in showing non-enablement, the defendant must show by clear and convincing evidence that the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention. The patent's specification, not the knowledge of one skilled in the art, must supply the allegedly novel aspects of an invention.[68] A patent specification that provides only a direction for further research is not enough.[69]

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation. In determining whether excessive experimentation is required, you may consider the following factors:

the scope of the claimed invention;

---

[67]  Gevo's proposed instruction is adapted from the Northern District of California Model Patent Jury Instruction No. 4.2b (Nov. 2011). Gevo objects to Butamax's proposed instruction as misstating the law.

[68]  *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283 (Fed. Cir. 2007) ("It is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention.") (internal quotation omitted); *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997) (same).

[69]  *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997) ("It is true … that a specification need not disclose what is well known in the art. However, that general, oft-repeated statement is merely a rule of supplementation, not a substitute for a basic enabling disclosure. It means that the omission of minor details does not cause a specification to fail to meet the enablement requirement. However, when there is no disclosure of any specific starting material or of any of the conditions under which a process can be carried out, undue experimentation is required; there is a failure to meet the enablement requirement that cannot be rectified by asserting that all of the disclosure related to the process is within the skill of the art.... This specification provides only a starting point, a direction for further research.").

the amount of guidance presented in the patent;

the amount of experimentation necessary;

the time and cost of any necessary experimentation;

how routine any necessary experimentation is in the field of biotechnology and metabolic engineering;

whether the patent discloses specific working examples of the claimed invention;

the nature and predictability of the field; and

the level of ordinary skill in the field of biotechnology and metabolic engineering.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

## V.      DELIBERATION AND VERDICT

### A.      Introduction

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

### B.      Unanimous Verdict

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.

Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' claims. Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer. When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

### C.        Duty to Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or

70

with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online or on television during the evening recess.

You may talk about the case only while you are in the jury room and everyone on the jury is present. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30. You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question during this time, you probably will not get an answer right away because we are all going to be stepping away from our phones.

**D.      Court Has No Opinion**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way.

You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.

1107509/HN